1  **LIEFF CABRASER HEIMANN**
     **& BERNSTEIN, LLP**
2  Jonathan D. Selbin (SBN 170222)
   jselbin@lchb.com
3  Jason Lichtman (*pro hac vice* forthcoming)
   jlichtman@lchb.com
4  250 Hudson Street, 8th Floor
   New York, NY 10013
5  Telephone: 212.355.9500
   Facsimile: 212.355.9592

6  **LIEFF CABRASER HEIMANN**
     **& BERNSTEIN, LLP**
7  Tiseme Zegeye (SBN 319927)
   tzegeye@lchb.com
8  275 Battery Street, 29th Floor
   San Francisco, CA 94111
9  Telephone: 415.956.1000
   Facsimile: 415.956.1008

10 **KAPLAN GORE, LLP**
11 Darren T. Kaplan (*pro hac vice* forthcoming)
   dkaplan@kaplangore.com
12 346 Westbury Ave., Suite 200
   Carle Place, NY 11514
13 Telephone (NY): 212.999.7370 ext. 101
   Fax (NY): 404.537.3320

14 *Attorneys for Plaintiffs and the Proposed Class*

15

16                UNITED STATES DISTRICT COURT

17              NORTHERN DISTRICT OF CALIFORNIA

18                    SAN JOSE DIVISION

19

| 20 | ALEXANDER KWITNY, NICHOLAS SCHIEDER, BRADLEY CALAME, and JOHN MUCCI Individually and on Behalf of All Others Similarly Situated, | Case No. 5:25-cv-10182 |
|---|---|---|
| 21 | | **CLASS ACTION COMPLAINT** |
| 22 | Plaintiffs, | **CLASS ACTION** |
| 23 | v. | **(1) VIOLATION OF CAL. CIV. CODE § 1750, *ET SEQ.*;** |
| 24 | GOOGLE LLC, | **(2) VIOLATION OF CAL. BUS. & PROF. CODE § 17500, *ET SEQ.*;** |
| 25 | Defendant. | **(3) VIOLATION OF CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*;** |
| 26 | | **(4) BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER CAL. COM. CODE §§ 2314, 10212.** |
| 27 | | **(5) FRAUD;** |
| 28 | | **(6) FRAUD IN THE INDUCEMENT;** **(7) UNJUST ENRICHMENT;** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**(8) REVOCATION OF ACCEPTANCE UNDER CAL. COM. CODE § 2608;**
**(9) VIOLATION OF 15 U.S.C. § 2301, *ET SEQ.***
**(10) VIOLATION OF CIV. CODE §§ 1791.1, 1792, *ET SEQ.***

**DEMAND FOR JURY TRIAL**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................... 1

II.     PARTIES ....................................................................................................................... 2

III.    JURISDICTION AND VENUE ................................................................................... 4

IV.     FACTUAL ALLEGATIONS ....................................................................................... 5

    A.    Google's False Claims that Google Nest Devices Act on Verbal Commands. ...... 7

    B.    The Defective Voice Command Feature of Google Nest Devices. ........................ 8

    C.    Google's Knowledge of the Defective Voice Command Feature. ...................... 11

    D.    Google's Misrepresentations and Omissions Regarding Fixes to the Defective Voice Command Feature. ................................................................................... 11

    E.    Plaintiffs' Sufficient Pre-Suit Notice. ................................................................ 12

V.      FRAUD ALLEGATIONS ......................................................................................... 12

VI.     TOLLING OF APPLICABLE STATUTE OF LIMITATIONS ................................ 14

    A.    Fraudulent Concealment Tolling ........................................................................ 14

    B.    Estoppel............................................................................................................... 15

    C.    Discovery Rule..................................................................................................... 15

VII.    CLASS ACTION ALLEGATIONS .......................................................................... 16

VIII.   CHOICE OF LAW .................................................................................................... 20

IX.     CLAIMS FOR RELIEF ............................................................................................ 20

    FIRST CAUSE OF ACTION Violations of the California Consumer Legal Remedies Act (Cal. Civ. Code § 1750, et seq.)......................................................... 20

    SECOND CAUSE OF ACTION False Advertising Under the California False Advertising Law (Cal. Bus. & Prof. Code § 17500, et seq.) ...................................... 23

    THIRD CAUSE OF ACTION Violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, et seq.)............................................................. 26

    FOURTH CAUSE OF ACTION Breach of Implied Warranty of Merchantability (Cal. Com. Code §§ 2314 and 10212)........................................................................... 27

    FIFTH CAUSE OF ACTION Fraud............................................................................ 28

        1.    Affirmative Misrepresentation.................................................................. 29

        2.    Omission/Concealment .............................................................................. 30

    SIXTH CAUSE OF ACTION Fraud in the Inducement ............................................. 33

    SEVENTH CAUSE OF ACTION Unjust Enrichment................................................ 34

    EIGHTH CAUSE OF ACTION Revocation of Acceptance (Cal. Com. Code § 2608).................... 34

    NINTH CAUSE OF ACTION Violations of the Magnuson-Moss Act – Implied Warranty (15 U.S.C. § 2301, et seq.)............................................................................ 35

    TENTH CAUSE OF ACTION Violations of the Song-Beverly Act (Civ. Code §§ 1791.1 and 1792, et seq.), via Breach of Implied Warranty of Merchantability .................... 37

X.      REQUEST FOR RELIEF .......................................................................................... 38

1

**TABLE OF CONTENTS**
(continued)

2

**Page**

3

XI.    JURY DEMAND ................................................................................................................ 39

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

Plaintiffs Alexander Kwitny, Nicholas Schieder, Bradley Calame, and John Mucci, individually and on behalf of all others similarly situated, bring this Class Action Complaint against Defendant Google LLC ("Google").  Upon personal knowledge as to Plaintiffs' own conduct, and on information and belief as to all other matters based on an investigation by counsel, Plaintiffs allege as follows:

## I. __INTRODUCTION__

1. This case arises from the common and device-wide malfunction of four different types of Google Home and Nest (hereinafter "Google Nest") devices, the Google Nest Hub, Google Nest Hub Max, Google Nest Mini, and Google Nest Audio, all of which lose voice control functionality.  Plaintiffs and other Class Members invested hundreds of dollars and hours into creating an ecosystem of smart home devices for their homes centered around Google Nest (hereinafter "Google Nest ecosystem").  These smart home devices are all connected to each other through a voice-command system (Google Nest and Google Assistant) that no longer functions properly.

2. Google induced Plaintiffs and other customers to spend hundreds of dollars to purchase Google Nest devices by promising a reliable voice-controlled smart home in which devices are interconnected to each other and to the Google Nest/Google Assistant tool and accurately register and respond to users' voice commands.  Plaintiffs purchased Google Nest devices with the reasonable expectation that the devices, including the voice-command system, would be dependable and fit for their ordinary and intended purpose and conform to the standards of the trade.

3. Google Nest devices no longer accurately respond to users' voice commands or do not register their voice commands at all.  For many if not most Google Nest users, Google Nest devices are so embedded in their smart homes that they encounter these malfunctions dozens of times daily.  Google Nest devices are designed to work within an embedded ecosystem of home devices—including lights, doorbells, locks, thermostats, and cameras.  The entire ecosystem of smart home devices cannot be voice-controlled if the voice command feature of the embedded Google Nest devices malfunction.  Simply put, the Google Nest devices are dysfunctional, unreliable, and unfit for their ordinary and intended purpose.

4. As a result, Plaintiffs and hundreds of thousands of consumers like them suffered harm in that they did not get what they paid for and are stuck with an unreliable, nonfunctioning Google Nest ecosystem in which they've invested hundreds, and sometimes thousands, of dollars that Google is unable

1  or unwilling to fix.

2  5.  Plaintiffs sent Google written pre-filing notice of its violations of applicable laws related to

3  the defective voice command feature of Google Nest products and demanded that Google correct or agree to

4  correct the actions described therein within thirty (30) days of such notice.  *See* Plaintiffs' pre-filing notice

5  letter, attached to this Complaint as Exhibit A.  Google responded on November 19, 2025, declining to

6  provide any of the requested relief and urging Plaintiffs to enroll in Gemini for Home, a new product it

7  launched last month.  *See* Google's response, attached to this Complaint as Exhibit B.  As alleged below,

8  their reference to Gemini for Home as fixing the voice command feature defect of Google Nest devices is

9  false.

10  6.  By this action, Plaintiffs, on behalf of themselves and all others similarly situated, seek, inter

11  alia, damages, restitution, disgorgement of profits, punitive damages, attorneys' fees, and an order requiring

12  Google to stop its breaches and to restore the functionality of Google Nest devices.

13  **II.  PARTIES**

14  7.  Plaintiff ALEXANDER KWITNY is a California citizen and resident domiciled in San

15  Diego, California.  Plaintiff Kwitny purchased numerous Google Nest devices, including a Google Nest

16  Hub Max, Google Nest Doorbell, Google Nest Cam Indoor, and a Google Home Max smart speaker, from

17  Amazon, Walmart, and Fry's Electronics over a period of nine years starting in 2016.  He installed these

18  devices throughout his home and utilized the voice command feature dozens of times a day.  Starting in

19  approximately 2019, his Google Nest devices began to malfunction and continue to malfunction to this day.

20  Frequently used and previously reliable voice commands began triggering incorrect or unrelated actions,

21  such as operating the wrong smart home device or launching a completely different function.  The Nest

22  devices' responses to voice commands became erratic and unpredictable.  He attempted to fix these

23  problems by resetting or relinking devices and upgrading his devices.  None of these actions resolved the

24  malfunctions.  Kwitny spent countless hours and thousands of dollars on the defective Google Nest devices.

25  8.  Plaintiff NICHOLAS SCHIEDER is a New York citizen and resident domiciled in

26  Tonawanda, New York.  Plaintiff Schieder purchased four Google Nest Minis and a Google Nest Hub Max

27  from Best Buy and Kohl's over a period of four years starting in 2020.  He installed these devices

28  throughout his home and utilized the voice command feature dozens of times a day to prompt internet

inquiries, turn on lights, and obtain basic information such as the weather forecast. Approximately one year ago, his Google Nest devices began to malfunction and continue to malfunction to this day. The devices became significantly slower to respond or incapable of responding altogether. For example, the smart speakers would often tell him, "I can't help with that" when prompted to do basic tasks like turning on the lights. He attempted to fix these problems by increasing the sensitivity of device mics, resetting or relinking devices, and upgrading his Google Nest Hub to a Google Nest Hub Max. None of these actions resolved the malfunctions. Schieder spent countless hours and hundreds of dollars on the defective Google Nest devices.

9.      Plaintiff BRADLEY CALAME is a Texas citizen and resident domiciled in Houston, Texas. Plaintiff Calame purchased numerous Google Nest devices, including seven or more Google Nest Minis, three or more Google Hubs, three Google Nest Thermostats, two or more Google Nest Temperature Sensors, and a Google Nest Doorbell, from eBay, Sam's Club, Newegg, and Bed Bath & Beyond over a period of nine years starting in 2016. He installed these devices throughout his home and utilized the voice command feature dozens of times a day. He still regularly uses three Google Nest Minis and three Google Hubs in his home to play music or podcasts, turn on lights, and integrate with other smart home devices like smart clocks. Approximately one year ago, his Google Nest devices began to malfunction and continue to malfunction to this day. The devices started to respond inaccurately or became incapable of responding altogether. For example, the smart speakers would often tell him, "I can't help with that" when prompted to do basic tasks like searching for an online article or turning on the lights. Other times, the devices play different content than what he prompted—for example, when prompted to play the newest episode of a popular podcast, the speakers play a different, random podcast. Occasionally, the devices do not recognize his voice at all. He attempted to fix these problems by reregistering his voice several times and resetting his devices. None of these actions resolved the malfunctions. Calame spent countless hours and thousands of dollars on defective Google Nest devices.

10.     Plaintiff JOHN MUCCI is a Florida citizen and resident domiciled in Land O' Lakes, Florida. Plaintiff Mucci has purchased thousands of dollars of Google Nest products and compatible smart devices for his home. He installed these devices throughout his home and utilized the voice command feature dozens of times a day to control audio or video streaming, lock doors, set thermostats, control cameras, respond to the doorbell, run his vacuum, and control his fans and lights. Plaintiff Mucci spent

CLASS ACTION COMPLAINT

hundreds of hours creating and fine-tuning custom, automated routines for waking up, going to sleep, and operating audio and video devices.  He purchased numerous compatible devices, including a Chromecast with Google TV Streamer from Walmart, specifically to control them by voice commands through his Google Nest devices.  Approximately two years ago, Plaintiff Mucci's Google Nest devices began to malfunction and continue to malfunction to this day.  The devices became incapable of responding or suddenly responded to voice commands in bizarre ways.  For example, when Plaintiff Mucci gave the trained audio command, "Let's go to bed," rather than executing the trained routine, Google Nest responded with a snoring sound.  He attempted to fix these problems by resetting or relinking his devices, but that did not solve the problems.  Plaintiff Mucci spent hours searching online for solutions to the problems he experienced but, beyond finding that many others were experiencing similar problems, did not find any solutions.  Mucci spent countless hours and thousands of dollars on defective Google Nest devices.

11.    Defendant GOOGLE LLC ("Google") is a California limited liability company.  It was previously known as BackRub, Inc., then Google, Inc., before becoming Google LLC.  Google is a subsidiary of Alphabet, Inc., and Google itself has numerous subsidiaries.

## III.    JURISDICTION AND VENUE

12.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because:  (a) the matter in controversy exceeds in the aggregate $5 million, exclusive of interests and costs; (b) at least one plaintiff is a citizen of a different state than at least one defendant; and (c) there are at least 100 class members.

13.    Plaintiffs allege that the total claims of members of the proposed Class in this action are in excess of $5,000,000 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6).

14.    Plaintiff Schieder is a citizen of New York, Plaintiff Calame is a citizen of Texas, and Plaintiff Mucci is a citizen of Florida, whereas Google is a citizen of California for the purposes of diversity.

15.    The proposed Class will include hundreds of thousands of consumers from dozens of states.

16.    Accordingly, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A).

17.    This Court has personal jurisdiction over Google pursuant to 18 U.S.C. § 1965 because

Google is headquartered in Mountain View, California, which is in this District.

18.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Google is subject to personal jurisdiction here and regularly conducts business in this District.  Google is headquartered in Mountain View, California, which is in this District.  Further, a substantial portion of the events or omissions giving rise to the claims asserted herein occurred in this District.  Specifically, Google designed and marketed its Google Nest devices from its headquarters in Mountain View, California, and some Class Members reside in and purchased their Google Nest device in this District.

19.    Google has expressly consented to venue in this Court pursuant to its Terms of Service contract.

20.    <u>Divisional Assignment</u>.  This action is properly assigned to the San Jose Division.  Google is headquartered in Santa Clara County.  N.D. Cal. Civ. L. R. 3-2(e).

## IV.    FACTUAL ALLEGATIONS

21.    Google develops, manufactures, and markets Google Nest (formerly known as Google Home) smart home devices.  Google Nest devices include smart displays, smart speakers, security cameras, doorbells, thermostats, and WiFi routers.  At least four Google Nest devices operate via voice control: Google Nest Hub, Google Nest Hub Max, Google Nest Mini, and Google Nest Audio.

22.    Google Nest Hub (formerly known as "Google Home Hub") is a smart display that provides a centralized, visual interface for controlling other smart home devices and cameras.  Google released and sold the first generation of Google Nest Hub—then called "Google Home Hub"—in October 2018.  In March 2021, Google released and began selling a second generation of the Google Nest Hub.  Google has not launched any new versions of Nest Hub since then.  The Google Nest Hub features a 7-inch touchscreen display, volume controls, microphones, speakers, and sensors.  The device allows users to—manually or with voice—control smart home devices, listen to music, read the news, and access all other features that already come with Google Assistant.

23.    Google Nest Hub Max is a larger version of the Google Nest Hub, with a larger display, a camera, and larger speakers.  Google announced the Nest Hub Max in 2019.  It has not launched any new versions of Nest Hub Max since then.  The Google Nest Hub Max features a 10-inch touchscreen tablet, a camera, a microphone, light sensors, and speakers.  The device allows users to video call, play music,

stream videos, shop, display pictures, and even show specific pictures through a user's verbal description of it.

24.    Google Nest Mini is the second-generation model of Google Home Mini. Google announced and began selling the Nest Mini in October 2019. Google has not launched any new versions of Nest Mini since then. The device has a speaker, microphone, machine learning chip that can cache voice recognition data, and LED lights indicating touchpoints for volume control. Several Nest Mini devices can be linked together to create a home audio system. Google Nest Minis can be voice-activated to stream audio content, search the internet, play the news, turn on smart lights, and interact with other smart home devices.

25.    Google Nest Audio is a smart speaker with built in Google Assistant and Voice Match technology. It includes speakers, microphones, and touch controls. Like the aforementioned Nest devices, Google Nest Audio allows users to control smart devices with voice command. Users can activate the device by saying "Hey Google" and stream audio content, set timers or schedule reminders, ask about the weather or news, move music playing on one Google Nest Audio to another Google Nest Audio or display elsewhere in the home, and control other smart home devices like smart lights.

26.    The aforementioned four Google Nest devices—Google Nest Hub, Google Nest Hub Max, Google Nest Mini, and Google Nest Audio (hereinafter "Google Nest devices")—interact with each other and enable users to speak voice commands to interact with services through Google Assistant, which is Google's virtual assistant. Google Nest users can listen to music, receive news updates, and search the internet entirely by voice. Google Nest devices also enable home automation, letting users control their smart home appliances with voice command. Users can create a smart home ecosystem centered around Google Nest devices and controlled through Google Assistant.

27.    On information and belief, through Google Assistant, voice commands are transmitted over the internet to Google's servers to analyze and process and, if the process works correctly, return instructions to the Google Nest devices or linked devices to perform the requested task (e.g., "Hey Google, turn on the lights in the kitchen"). It is this analysis and processing of voice commands on the Google servers and the transmittal back of instructions that are defective. Indeed, rather than getting "smarter" and better over time as more data is received and analyzed, the servers that make up the backend of Google Assistant have become "dumber" and worse at their core function of analyzing and processing voice

CLASS ACTION COMPLAINT

1    commands and transmitting back via the internet the correct instructions.

2        28.    Over the last five years, Google Nest devices began to malfunction.  The devices no longer

3    respond to voice commands, randomly turn on or off, randomly go offline, disconnect from each other, fail

4    to perform basic tasks, and respond slowly or with error messages.  For example, when asked to turn off the

5    lights, the devices turn on a fan.  Audio devices and smart speakers unexplainably stop playing music or

6    podcasts, and TVs turn off mid-use.  Devices do not respond to even basic verbal questions like "What's the

7    weather?".

8        A.    **Google's False Claims that Google Nest Devices Act on Verbal Commands.**

9        29.    The ability to control the device via voice command (hereinafter "voice command feature")

10    is a core feature Google Nest products and—for the Plaintiffs and Class Members—the most important

11    reason to purchase Google Nest devices to use throughout their homes.  The voice command feature

12    provides users with a hands-free way to operate, among other things, the lights, heating systems, clocks, and

13    smart displays throughout their home.  And for those with physical difficulties, controlling lights, displays,

14    and thermostats via voice command can be essential to daily life.

15        30.    Unsurprisingly, the voice command feature is the centerpiece of Google's promotional

16    efforts.  A widely-circulated commercial introduces Google Home (now called Google Nest Audio) as a

17    product that can make users feel like a "celebrity with a personal assistant, because you can say stuff like

18    'OK, Google put milk on my shopping list' or 'turn off the lights.'"[1]  Another commercial showcases a

19    family of four interacting with Google Nest products to play music in multiple rooms, set reminders, send

20    texts, turn the lights on in other rooms, search the internet, stream videos on a smart TV, and ask for traffic

21    information—all by simply verbally prompting the devices with "Hey, Google" or "OK, Google."[2]

22        31.    Importantly, these advertisements and product descriptions do not state or even remotely

23    suggest that the voice command feature malfunctions or becomes totally unresponsive.  To the contrary,

24    Google expressly markets Google Nest devices for the convenience and dependability of their voice

25    command features and depicts them in homes, seamlessly integrated into users' daily activities.

26

27    [1] Google, *Google Home: Celebrity* (YouTube, Jun. 7, 2017), https://youtu.be/zYcZC-rcYrc?si=d_vawDtZtHud9j2O.

28    [2] Peek of the Net, *Google Home Official Ad* (YouTube, Feb. 4, 2017), https://youtu.be/OsXedJq1aWE?si=YYD2BexQGogTa2FB.

CLASS ACTION COMPLAINT

32.    Google represents, "Google smart speakers and displays make life easier with features that let you use your voice to play media, manage your tasks, plan your day, and much more."[3]  Google also lists example questions that users can ask Google Assistant to provide information and help with daily tasks. These questions include:  "What's the weather today?";  "How's the traffic to work?"; "Remind me to do laundry this evening."; "Play some Jazz music."; and "Play the news. What's the latest news from BBC?"[4] Google encourages users to prompt smart speakers and displays with commands like:  "Dim the living room lights."; "Set the heat to 70."; "Set an alarm for 7 AM."; "Call Mom."; and "Make a video call."[5]

33.    Google tells consumers, "You can use voice commands to manage devices that you've added to the Google Home app. These can be media devices, speakers and displays, lights, thermostats, and much more. To use a voice command on a Google Nest or Home speaker or display, you can say 'Hey Google' or 'OK Google' and then the command."[6]

**B.    The Defective Voice Command Feature of Google Nest Devices.**

34.    There have been widespread complaints about frequent glitches and malfunctions of the voice command feature.  The types of system malfunctions reported include consistently failing to interpret or act on voice commands, returning irrelevant information, losing internet connectivity despite a stable WiFi connection, and failing to recognize registered user voices.  Users indicate a steady decline in functionality often culminating in the cessation of use of the devices entirely because they do not work consistently and cause significant problems when they malfunction.  Users report investing many hours and hundreds and sometimes thousands of dollars in their Google Nest ecosystems.

35.    Plaintiffs are four of many thousands of victims of Google's decision to breach its promise to provide an integrated smart home ecosystem that can be controlled with voice command.  Users voiced their frustrations and experiences online.

---

[3] Google Nest Help, *Explore what you can do with Google smart speakers and displays*, https://support.google.com/googlenest/answer/7130274?hl=en (last visited Nov. 6, 2025).
[4] Google Assistant Help, *What you can ask Google Assistant*, https://support.google.com/assistant/answer/7172842?hl=en (last visited Nov. 6, 2025).
[5] Google Assistant Help, *What you can ask Google Assistant*, https://support.google.com/assistant/answer/7172842?hl=en#zippy=%2Con-your-speaker-or-smart-display (last visited Nov. 6, 2025).
[6] Google Nest Help, *Control smart home devices by voice*, https://support.google.com/googlenest/answer/7207759?hl=en (last visited Nov. 6, 2025).

CLASS ACTION COMPLAINT

36.     For example, Google Nest user called "ThrowAway280796" stated:  "I used to use my Google home to set reminders, alarms, timers, etc. All kinds of things to help keep me organized (due to my ADHD and all). But lately, all the commands that used to work flawlessly will just… not. If I said 'Hey Google, set a 10 minute timer' or 'Hey Google, set an alarm for tomorrow at 8PM', it would just say 'Okay, timer/alarm set' and that would be that. Now if I try to do those, it'll instead reply with 'You seem to want to set a timer/alarm/reminder. Is that correct?'. To which I now have to respond with 'Yes'. Then it'll reply 'Okay'. And from there, it is a 50/50 chance that it actually set the alarm/timer. Even more maddening is that I also have no way of stopping the alarms/timers with voice anymore. I used to be able to just say 'Stop' or 'Hey Google. Stop' and it would stop ringing. Now no matter what I say, it. Does not. Stop. If I say 'Hey Google, stop all alarms' it'll either reply with 'okay' or 'You have no alarms set at the moment' and keep ringing. Nothing I do stops the damn thing from ringing short of going up to the offending device and tapping it over and over until it stops. I have three Nest Minis at home and they all start exhibiting the exact same behavior at the exact same time. I'm at the end of my sanity. Does anyone know for any reason why this could be happening? Or how to stop it?"

37.     Google Nest user "Icy_Cantaloupe452" added:  "Currently I still own a few Google Nest mini and everyday I consider throwing them in the garbage and replacing them with Alexas. In fact, I already replaced one as a test and I have to say it was a pretty good trade. My Google home devices don't seem to be able to understand the most basic instructions, such as playing music. Most of the times it will listen to my request, and simply do nothing. Some other times, it plays a different music. But in a 100% of the time it takes several seconds for it to do something - sometimes it's faster to do those tasks myself. Overall my experience with google home lately has been nothing but terrible - and again, it used to be pretty good a few years ago."

38.     A customer called "nittanyvalley" offered:  "Recently, my Google Nest Mini has almost completely stopped responding to 'Hey Google'. It seems like it only ever works the first time after power up, or the first time after like 5-10 minutes of no 'Hey Google' activity. Otherwise, it won't even pick up my voice, even from right over top of it, with no other sound on in the room. I've tried it with voice match enabled and disabled, and it fails to work at all for multiple people. Seems like maybe a bad firmware update maybe broke it?"

39.     Another complaint came from "Apprehensive-Yard-59":  "Noticed that I suddenly cannot turn on any of my hue light or my Roborock Vacuum anymore using my Nest Hub with voice commands. I can turn them off but not on. It says there was a problem and that I can try later. Restarted the nest hub without improvement. Also restarted the Hue bridge and have removed the link to hue and roborock in the Google assistant/home app. I tried typing the commands to turn on off lights in the assistant app, but it is the same issue as when using voice commands, it can only turn off devices. In the Google Home app I can still turn on/off all devices. This has been working without any issue for several years but suddenly it doesn't."

40.     Another online complaint came from "Nickanoms88":  "My nest hub max isn't responding to anything and always says 'sorry there was a glitch' or 'something went wrong'. I've moved it to different spots as i thought it was interference but its not. YouTube widget and spotify widget work fine, but no voice commands at all. Tbh I'm at my wits end with it. It has been happening sporadically for a few months but now it doesn't work at all, even after a hard reset. Has anyone else experienced this? I've tried searching online but haven't found anything that will help as of yet."

41.     Nest user "spartycus2010" lamented:  "Mine has stopped working correctly since 2 weeks ago. Just doesn't seem to register commands correctly anymore. For example, I ask it to turn off living room lights, which used to work flawlessly for years, and now it just turns off the back left light. No matter how many times I repeat the command or try to change how I pronounce it, it keeps making the same error. Getting a planned obsolescence vibe. These devices should only improve with massive data collection and ai learning, but it's just randomly becoming useless for no apparent reason."

42.     These are but a few illustrative examples of the complaints from victims of Google's breach of its promise to provide a reliable voice-controlled smart home ecosystem.  Such complaints are, of course, just the tip of the iceberg; most customers suffer in silence, understandably reluctant to challenge the company holding their data and upon which they are in significant part dependent for their livelihoods.

43.     Plaintiffs and other Class Members tried troubleshooting their malfunctioning devices by restarting them, making sure they are connected to WiFi, and confirming that they've installed all available software updates.  Some Plaintiffs and Class Members have replaced and upgraded many or all of their devices but still experience problems with the voice command feature.  Plaintiff Kwitny recalls having to flip his circuit breaker or climb a ladder to turn his smart lights on and off because his Google Nest devices

CLASS ACTION COMPLAINT

stopped responding or acting on commands properly.  Plaintiff Schieder reset and relinked his malfunctioning devices, replaced one of his Google Nest Minis, and even installed a circuit connecting all his recessed smart lights to a switch so that he would have an alternative to Google Nest's unreliable voice command feature.  Plaintiff Calame searched up and followed the instructions of Google Support articles, to no avail.  He also reregistered his voice with his Google Nest devices several times, but the devices still periodically fail to recognize his voice.

### C.    Google's Knowledge of the Defective Voice Command Feature.

44.    Upon information and belief, Google knew of the voice command feature defects and concealed the defects from consumers.

45.    On July 23, 2025, Chief Product Officer at Google Home and Nest, Anish Kattukaran, publicly acknowledged the product defects on X, stating, "Hey everyone, I want to acknowledge the recent feedback about Google Assistant reliability on our home devices. I sincerely apologize for what you're experience and feeling! We hear you loud and clear and are committed to getting this right – and making sure we have a long term solution that provides better reliability and capability, We have been actively working on major improvements for some time and will have more to share in the fall."[7]  As part of Google's October 2025 rollout of Gemini for Home, integrating AI into Google Nest devices and services, Kattukaran again acknowledged the product defects, "admitting to past performance issues with Google Home."[8]

### D.    Google's Misrepresentations and Omissions Regarding Fixes to the Defective Voice Command Feature.

46.    Even after Google responded to the initial wave of complaints by saying that fixes and upgrades are on the way, users continued to experience problems with the voice command feature of Google Nest devices.

47.    In October 2025, Google launched Gemini for Home, which Google claimed would fix the

---

[7] Adamya Sharpa, *Google Home is becoming a house of glitches, users say*, Android Authority (Jul. 23, 2025), https://www.androidauthority.com/google-home-speakers-hubs-issues-3579553/; Anish Kattukaran (@AnishKattukaran), X (Jul. 23, 2025, at 4:31 PM), https://x.com/AnishKattukaran/status/1948164062384406814?t=yUTsPiecyXO8dteiiq5bXw&s=19.

[8] Mishaal Rahman, *How Google plans to fix its smart home mess with Gemini for Google Home* (Oct. 4, 2025), https://www.androidauthority.com/google-home-win-back-trust-3604047/.

CLASS ACTION COMPLAINT

reliability issues of existing Google Home and Nest products.  In an interview with a reporter from Android Authority, Kattukaran acknowledged the performance issues with Google Home devices and claimed that the introduction of Gemini would "significantly improve the smart home experience, which is ultimately why Google decided to rip the band-aid off and make the transition" and that Gemini for Google Home would "improve the foundational experience."[9]

48.     However, the launch of Gemini for Home to replace Google Assistant did not fix the defective voice command feature.  An article explained, "the core grievances—turning lights on and off, setting household timers, syncing multi-room audio—aren't automatically fixed by better chit-chat. Google has acknowledged reliability concerns in community posts, and its product leaders previously pointed to a wave of fall updates that are supposed to stabilize the experience. But many users argue that those promises have been overshadowed by the Gemini push. The frustration here is less the shift in features than the perception that long-standing bugs have been papered over rather than fixed; reliability comes from a few deeply unglamorous subsystems."[10]

**E.     Plaintiffs' Sufficient Pre-Suit Notice.**

49.     On October 20, 2025, Plaintiffs sent Google actual written pre-filing notice of its violations of applicable consumer-protection and warranty laws related to the defective Google Nest products and demanded that Google correct or agree to correct the actions described therein within thirty (30) days of such notice.  *See* Ex. A.

50.     On November 19, 2025, Google denied the factual assertions and legal conclusions presented in Plaintiffs' letter.  Among other things, Google stated that it provides its services "as is" and under Limited Warranty, and invited Plaintiffs to enroll in Gemini for Home.  *See* Ex. B.

**V.     FRAUD ALLEGATIONS**

51.     Absent discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Google responsible for disseminating false and misleading marketing materials regarding Google Nest devices.  Google necessarily is in possession of all

---

[9] Rahman, Mishaal, *How Google plans to fix its smart home mess with Gemini for Google Home*, Android Authority (Oct. 4, 2025), https://www.androidauthority.com/google-home-win-back-trust-3604047/.

[10] Gregory Zuckerman, *Google Home Backlash Grows: Basics Fail as 'AI' Excuse Wears Thin*, FINDARTICLES (Nov. 3, 2025, 10:20 AM), https://www.findarticles.com/google-home-backlash-grows-basics-fail-as-ai-excuse-wears-thin/.

CLASS ACTION COMPLAINT

this information.

52.     Plaintiffs' claims arise out of Google's fraudulent concealment of the voice command feature defect and its representations about the quality and dependability of Google Nest devices.

53.     Google was under a duty to disclose the voice command feature defect because it had superior, if not exclusive, knowledge of the defect; knew the defect was a material fact that would affect Plaintiffs' and Class Members' decisions to buy Google Nest devices; intentionally concealed the foregoing from Plaintiffs and Class Members; made partial representations to Plaintiffs and Class Members both prior to and at the time of sale while purposefully withholding material facts from Plaintiffs and Class Members that contradicted these representations; and did not disclose its knowledge of the defect when Plaintiffs and Class Members submitted complaints or requests for repair.

54.     Plaintiffs make the following specific fraud allegations with as much specificity as possible absent access to the information necessarily available only to Google:

a.     **Who**:  Google failed to disclose and/or actively concealed the voice command feature defect from Plaintiffs and Class Members while simultaneously representing and marketing Google Nest devices as high-quality, dependable, and reliable.  Plaintiffs are unaware of, and therefore unable to identify, the true names and identities of those specific individuals at Google responsible for such decisions.

b.     **What**:  Google knew, or was reckless in not knowing, that the Google Nest devices have the voice command defect.  Google did not disclose and/or actively concealed the defect and made representations about the attributes of the Google Nest devices.  For example, Google represented to users, "You can use voice commands to manage devices that you've added to the Google Home app. These can be media devices, speakers and displays, lights, thermostats, and much more. To use a voice command on a Google Nest or Home speaker or display, you can say 'Hey Google' or 'OK Google' and then the command."[11]  These representations signal to consumers that the defective Google Nest devices possess important characteristics that they in fact do not possess—namely that they can respond to voice command.

c.     **When**:  Google did not disclose and/or actively concealed material information regarding the voice command defect at all times and continues to market Google Nest devices for their

_____

[11] Google Nest Help, *Control smart home devices by voice*, https://support.google.com/googlenest/answer/7207759?hl=en (last visited Nov. 6, 2025).

CLASS ACTION COMPLAINT

voice command feature.  Google has never taken any action to inform Plaintiffs and Class Members about the true nature and extent of the defect of Google Nest devices.

        d.    **Where**:  Google did not disclose and/or actively concealed material information regarding the true nature of the voice command feature defect and made misrepresentations about the quality of Google Nest devices.  Plaintiffs are aware of no document communication, or other place or thing, in which Google disclosed the truth about the voice command defect in the Google Nest devices to Plaintiffs, Class Members, or the general public.  Such information is not adequately disclosed in any sales documents, displays, advertisements, or on Google's website.

        e.    **How**:  Google concealed the voice command defect from Plaintiffs and Class Members and made misrepresentations about the quality and reliability of Google Nest devices.  Google did not disclose and/or actively concealed the truth about the existence and nature of the voice command feature defect from Plaintiffs and Class Members at all times, even though it knew about the voice command feature defect and knew that information about the voice command feature defect would be important to a reasonable consumer.  Google promised in its marketing materials that Google Nest devices have qualities that they do not have—namely, the ability to respond accurately and reliably to voice command.

        f.    **Why**:  Google did not disclose and/or actively concealed material information about the voice command feature defect in the Google Nest devices for the purpose of inducing Plaintiffs and Class Members to purchase Google Nest devices, rather than purchasing competitors' smart home devices, and made representations about the quality, dependability, and convenience of Google Nest devices.  Had Google disclosed the truth, for example in its advertisements or other materials or communications, Plaintiffs and Class Members—all reasonable consumers—would have been aware of the voice command feature defect and would not have bought Google Nest devices or would have paid less for them.

## VI.    **TOLLING OF APPLICABLE STATUTE OF LIMITATIONS**

55.    Any applicable statutes of limitation have been tolled by Google's fraudulent concealment of the defect, by estoppel, and by the discovery rule.

### A.    **Fraudulent Concealment Tolling**

56.    The statute of limitations has not begun to run because Google continues to fraudulently conceal the voice command defect.  On information and belief, Google has known about the defect of the

voice command feature of Google Nest for years through, among other sources, pre- and post-market testing, customer complaints, warranty repairs, internal investigations, and/or public reporting.  Google knew of all the defects well before the Plaintiffs and many Class Members purchased Google Nest devices, and have concealed from or failed to notify Plaintiffs, Class Members, and the public of the full and complete nature of the voice command feature defect.  To this day, Google continues to conceal the defect and has undertaken no steps to inform Plaintiffs or Class Members of the nature and extent of the voice command feature defect.

57.     Any applicable statute of limitation has been tolled by Google's knowledge, active concealment, and denial of the facts alleged herein, behavior of which is ongoing.

**B.     Estoppel**

58.     As detailed in Paragraph 54, *supra*, Google was and is under a continuous duty to disclose to Plaintiffs and Class Members the true character, quality, and nature of Google Nest devices.  Google actively concealed—and continues to conceal—the true character, quality, and nature of the Google Nest devices and knowingly made misrepresentations about the voice command feature of those devices.  Based on the foregoing, Google is estopped from relying on any statutes of limitation in defense of this action.

**C.     Discovery Rule**

59.     The causes of action alleged herein did not accrue until Plaintiffs and Class Members discovered that their Google Nest devices had the voice command feature defect.

60.     Plaintiffs and Class Members had no reason to know the glitches and malfunctions of the voice command feature were caused by a defect in the Google Nest devices because of Google's active concealment of the voice command defect.  Not only did Google fail to notify Plaintiffs and Class Members about the voice command feature defect, Google in fact suggested it was external factors—like WiFi connectivity issues or microphone sensitivity issues—that caused such glitches.  Through no fault or lack of diligence, Plaintiffs and the other Class Members were deceived regarding the voice command feature defect and could not reasonably discover it or Google's deception with respect to the defect.

61.     For these reasons, the statute of limitations as to Plaintiffs' and Class Members' claims did not begin to run and has been tolled with respect to the claims that Plaintiffs and the other Class Members have alleged in this Complaint.

1

## VII.    CLASS ACTION ALLEGATIONS

2      62.    Plaintiffs bring this lawsuit as a class action on their own behalf and on behalf of all other

3   persons similarly situated as members of the proposed Class pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3),

4   and/or (c)(4).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and

5   superiority requirements of those provisions.

6      63.    The claims of all Class Members derive directly from the same defective voice command

7   feature.  This case is about the responsibility of Google for its products, and the affirmative

8   misrepresentations and concealment/omissions it made with respect to its products.  Google engaged in

9   uniform and standardized conduct toward the Class.  It did not differentiate, in degree of care or candor, in

10  its actions or inactions, or in the content of its statements or omissions, among individual Class Members.

11  The objective facts are the same for all Class Members.  Accordingly, the Proposed Class is defined as:

12          All persons in the United States who purchased a Google Nest Hub, Google
            Nest Hub Max, Google Nest Mini, or Google Nest Audio device from any
13          retailer other than on Store.Google.com.

14          Excluded from the Class are:  (A) any customers who purchased Google Nest
            Hub, Google Nest Hub Max, Google Nest Mini, or Google Nest Audio
15          devices only from Google on Store.Google.com and who did not opt out of
            the arbitration agreement; (B) persons who have suffered personal injuries,
16          actionable emotional distress, or wrongful death as a result of the facts alleged
            herein; (C) Google's officers, directors, affiliates, representatives, employees,
17          successors, subsidiaries, and assigns; and (D) any judge, justice, or judicial
            officer presiding over this matter and the members of their immediate families
18          and judicial staff.

19      64.    Plaintiffs reserve the right to amend the definition of the Class and/or propose subclasses if

20  discovery or further investigation reveals that the Class should be expanded or otherwise modified.

21      65.    Numerosity.  Class Members are so numerous and geographically dispersed that joinder of

22  all Class Members is impracticable.  There are at least thousands of putative Class Members.  By 2023,

23  Google Nest devices held an estimated 20-25% share of the U.S. smart speaker market.[12]

24      66.    Common Questions of Law and Fact Predominate.  Common questions of law and fact exist

25

26

27  [12] According to Industry Experts, Amazon continues to dominate, with its Echo devices holding around 65%
    - 70% market share in the U.S. as of 2023. Google follows with its Nest devices, which capture around 20%
28  - 25% of the market.  Apple's HomePod, while smaller in market share, benefits from Apple's ecosystem
    and loyal customer base.  Fortune Business Insights, *Key Market Insights*, (Nov. 3, 2025)
    https://www.fortunebusinessinsights.com/u-s-smart-speaker-market-110631.

CLASS ACTION COMPLAINT

1    for all Class Members and predominate over any questions affecting only individual Class Members.  These

2    common legal and factual questions include, but are not limited to, the following:

3         a.       Whether Google Nest devices are defective;

4         b.       Whether the Google Nest devices suffer from the same or substantially similar defect;

5         c.       Whether Google knew or should have known about the voice command feature

6    defect, and, if so, for how long;

7         d.       Whether the defective nature of the Google Nest devices constitutes a material fact

8    reasonable consumers would have considered in deciding whether to purchase the Google Nest devices;

9         e.       Whether Google made affirmative misrepresentations of material fact about the

10   defective Google Nest devices;

11        f.       Whether Google's concealment of the true nature of the Google Nest devices induced

12   Plaintiffs and the other Class Members to act to their detriment by purchasing the defective devices;

13        g.       Whether Google engaged in unfair, deceptive, and unlawful acts or practices in trade

14   or commerce by failing to disclose that the Google Nest products were defective;

15        h.       Whether Google's conduct, as alleged herein, was likely to mislead a reasonable

16   consumer;

17        i.       Whether Google's statements, concealments, and omissions regarding the Google

18   Nest products were material, in that a reasonable consumer could consider them important in purchasing,

19   selling, maintaining, or operating the Google Nest devices;

20        j.       Whether Google violated California's Unfair Competition Law and Consumer Legal

21   Remedies Act, and if so, what remedies are available under those statutes;

22        k.       Whether the Google Nest devices were unfit for the ordinary purposes for which they

23   were used, in violation of the implied warranty of merchantability;

24        l.       Whether Class Members suffered an ascertainable loss of money or property, or other

25   value as a result of Google's acts, misrepresentations, and omissions of material facts;

26        m.       Whether Plaintiffs and the other Class Members are entitled to a declaratory judgment

27   stating that the Google Nest products are defective and/or not merchantable;

28        n.       Whether Google's unlawful, unfair, and/or deceptive practices harmed Plaintiffs and

1    the other Class Members;

2              o.      Whether Google has been unjustly enriched by its conduct;

3              p.      Whether Class Members are entitled to equitable or injunctive relief, and, if so, the

4    nature of such relief; and

5              q.      What aggregate amounts of statutory penalties are sufficient to punish and deter

6    Google and to vindicate statutory and public policy.

7        67.    <u>Typicality</u>.  Plaintiffs' claims are typical of those of the absent Class Members in that

8    Plaintiffs and the Class Members each purchased and used the Google Nest products and each sustained

9    damages arising from Google's wrongful conduct, as alleged more fully herein.  Plaintiffs share the

10   aforementioned facts and legal claims or questions with putative members of the Class.  Plaintiffs and all

11   members of the putative Class have been similarly affected by Google's common course of conduct alleged

12   herein.  Plaintiff and all members of the putative Class sustained monetary and economic injuries including,

13   but not limited to, ascertainable loss arising out of Google's actions, misrepresentations, and omissions

14   regarding the Google Nest products.

15       68.    <u>Adequacy of Representation</u>.  Plaintiffs will fairly and adequately represent and protect the

16   interests of the Class.  By prevailing on their own claims, Plaintiffs will establish Google's liability to all

17   Class Members.  Plaintiffs' counsel are unaware of any conflict of interest between Plaintiffs as class

18   representatives and absent Class Members with respect to the matters at issue in this litigation.  Plaintiffs

19   will vigorously prosecute the case on behalf of the Class.  Plaintiffs have retained counsel with substantial

20   experience in handling complex class action litigation, including complex questions that arise in this type of

21   consumer protection litigation.  Further, Plaintiffs and their counsel are committed to the vigorous

22   prosecution of this action.

23       69.    <u>Superiority of Class Action</u>.  A class action is superior to other available methods for the fair

24   and efficient adjudication of the present controversy for at least the following reasons:

25              a.      The damages suffered by each individual member of the putative Class do not justify

26   the burden and expense of individual prosecution of the complex and extensive litigation necessitated by

27   Google's conduct;

28              b.      Even if individual members of the Class had the resources to pursue individual

- 18 -

litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

        c.      The claims presented in this case predominate over any questions of law or fact affecting individual members of the Classes;

        d.      Individual joinder of all members of the Class is impracticable;

        e.      Absent a class action, Plaintiffs and members of the putative Class will continue to suffer harm as a result of Google's unlawful conduct; and

        f.      This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the putative Class can seek redress for the harm caused by Google.

70.    <u>Risk of Inconsistent or Varying Adjudication.</u>  In the alternative, the Class may be certified for the following reasons:

        a.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication concerning individual members of the Class, which would establish incompatible standards of conduct for Google;

        b.      Adjudication of claims of the individual members of the Class against Google would, as a practical matter, be dispositive of the interests of the other members of the putative Class who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests; and

        c.      Google has acted or refused to act on grounds generally applicable to the members of the putative Class, thereby making appropriate final and injunctive relief concerning the putative Class as a whole.

71.    <u>Injunctive Relief.</u>  Google, as the party that may potentially oppose certification of the Class, has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief.

72.    <u>Certification of Particular Issues.</u>  The claims of class members include common issues whose efficient adjudication in a class proceeding would materially advance the litigation and aid in achieving judicial economy and efficiency.  Hence, in the alternative, class certification under Rule 23(c)(4) is appropriate as to certain issues.

1

## VIII.   CHOICE OF LAW

2        73.      California law governs the substantive legal issues in this case.  Google's Terms of Service

3   with Plaintiffs and all Class Members provide for the application of California law.  *See* Google's Terms of

4   Service, attached to this Complaint as Exhibit C.

5        74.      Additionally, because this Complaint is brought in California, California's choice of law

6   regime governs the state law allegations in this Complaint.

7        75.      Under California's governmental interest/comparative impairment choice of law rules,

8   California law applies to the claims of all Class Members, regardless of their state of residence or state of

9   purchase.  California has a constitutionally significant contact or sufficient aggregation of contacts to the

10  claims of Plaintiffs and each putative Class Member in this case because Google's headquarters are in

11  California, upon information and belief all decisions relevant to these claims were made in California, and a

12  large proportion of Class Members are located in California.  California has a materially greater interest in

13  the rights, interests, and policies involved in this action than any other state such that the application of

14  California law to Google and the claims of all Class Members is neither arbitrary nor unfair.

15       76.      Moreover, in Google's Terms of Service, Google declares that "California law will govern

16  all disputes arising out of or relating to these terms, service-specific additional terms, or any related

17  services, regardless of conflict of law rules.  These disputes will be resolved exclusively in the federal or

18  state courts of Santa Clara County, California, USA, and you and Google consent to personal jurisdiction in

19  those courts."[13]  This provision demonstrates Google's awareness and agreement that California law should

20  apply to the claims of this Complaint, and Google is estopped from contending otherwise.  *See* Ex. C.

21  ## IX.   CLAIMS FOR RELIEF

22  ### FIRST CAUSE OF ACTION

23  ### *Violations of the California Consumer Legal Remedies Act (Cal. Civ. Code § 1750, et seq.)*

24       77.      Plaintiffs hereby incorporate by reference the allegations contained in the preceding

25  paragraphs of this Complaint.

26       78.      This claim is brought on behalf of the Class to seek injunctive relief as well as monetary

27  _____

28  [13] Google, *Google Terms of Service* (May 22, 2024), https://policies.google.com/terms?hl=en (last visited Nov. 13, 2025).

damages against Google under California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*

79.    Google is a "person" as defined by the CLRA.  Cal. Civ. Code § 1761(c).

80.    Plaintiffs and Class Members are "consumers" within the meaning of the CLRA, as defined by Cal. Civ. Code § 1761(d), who purchased one or more Google Nest devices.

81.    The CLRA prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770(a).

82.    Google engaged in unfair or deceptive trade practices that violated Cal. Civ. Code § 1770(a), as described above and below, by, among other things, failing to disclose the defective nature of the Google Nest devices, representing that the Google Nest devices had characteristics and benefits that they do not have (e.g., the ability to centralize voice command control of a smart home ecosystem), representing that the Nest devices were of a particular standard, quality, or grade when they were of another, and advertising Nest devices with the intent not to sell them as advertised.  *See* Cal. Civ. Code §§ 1770(a)(5), (a)(7), (a)(9).

83.    Google knew, should have known, or was reckless in not knowing that its products did not have the qualities, characteristics, and functions it represented, warranted, and advertised them to have.

84.    Google's unfair and deceptive acts or practices occurred repeatedly in Google's course of trade or business, were material, were capable of deceiving a substantial portion of the purchasing public, including Plaintiffs and Class Members.

85.    Google was under a duty to Plaintiffs and Class Members to disclose the deceptive and defective nature of the Google Nest devices because:

        a.    Google was in a superior position to know the true state of facts about the voice command feature defect in the Nest devices;

        b.    Plaintiffs and Class Members could not reasonably have been expected to learn or discover that the Nest devices have the latent voice command feature defect; and

        c.    Google knew that Plaintiffs and Class Members could not reasonably have been expected to learn or discover the defect in the Google Nest devices.

86.    In failing to disclose the defective nature of the Nest devices, Google knowingly and

1  intentionally concealed material facts and breached its duty not to do so.

2  87.    The facts that were misrepresented, concealed, or not disclosed by Google to Plaintiffs and

3  Class Members are material in that a reasonable consumer would have considered them to be important in

4  deciding whether or not to purchase a Google Nest device.  Had Plaintiffs and other Class Members known

5  about the true nature and quality of Google Nest devices, they would not have purchased a Google Nest

6  device or would have paid significantly less than they did for their Google Nest device.

7  88.    Plaintiffs and Class Members are reasonable consumers who expect that their Google Nest

8  device will be able to recognize and act on voice commands, as represented.

9  89.    As a result of Google's conduct and unfair or deceptive acts or practices, Plaintiffs and Class

10  Members suffered actual damages in that their Nest devices do not function as represented and are not worth

11  the amount paid, and Google has deprived Plaintiffs and Class Members of the benefit of the bargain.

12  90.    Plaintiffs and the Class seek an order enjoining Google's unfair or deceptive acts or

13  practices, equitable relief, an award of attorneys' fees and costs under Cal. Civ. Code § 1780(e), and any

14  other just and proper relief available under the CLRA.

15  91.    In addition, many Class Members are senior citizens or disabled persons, as defined by Cal.

16  Civ. Code §§ 1761(f) and (g), who suffered substantial economic damage resulting from Google's

17  fraudulent representations regarding the Google Nest devices.  Each of those Class Members is entitled to

18  up to an additional $5,000.  Cal. Civ. Code § 1780(b).

19  92.    In accordance with § 1782(a) of the CLRA, Plaintiffs' counsel, on behalf of Plaintiffs

20  Alexander Kwitny and Nicholas Schieder and the other Class Members, sent Google notice on October 20,

21  2025 of their alleged violations of Cal. Civ. Code § 1750, *et seq.* and other state consumer statues in

22  connection with the manufacture, advertising, marketing, and sale of certain Google Nest devices purchased

23  by Plaintiffs and the other Class Members, and demanded that they correct or agree to correct the actions

24  described therein within thirty (30) days of such notice.  *See* Ex. A.  Google did not correct or agree to

25  correct the actions described in the letter and in this Complaint within thirty (30) days of the notice.  *See* Ex.

26  B.  Plaintiffs and Class Members thus seek an award of compensatory, monetary, and punitive damages

27  based on the conduct described herein, as well as any other relief the Court deems proper.

28

CLASS ACTION COMPLAINT

**SECOND CAUSE OF ACTION**

***False Advertising Under the California False Advertising Law (Cal. Bus. & Prof. Code § 17500, et seq.)***

93.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

94.     Plaintiffs bring this cause of action for themselves and on behalf of the Class.

95.     Plaintiffs, Class Members, and Google are "persons" within the meaning of Cal. Bus. & Prof. Code § 17506.

96.     The California False Advertising Law ("FAL") states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

97.     Google directly and through its agents, employees, and/or subsidiaries, violated the FAL by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the functionality of the Google Nest devices, as detailed above. Google's actionable conduct includes misrepresentations, omissions, concealment, and failure to disclose known defects of the voice command feature of the Google Nest products.

98.     The FAL imposes an ongoing duty on Google to refrain from unfair and deceptive business practices, which includes disclosing all material facts, such as latent voice command defects, of the Google Nest devices to consumers because:

a.     Given Google's role in the design, manufacture, testing, and sale of the Nest devices, it possessed exclusive access to and were in a superior position to know the true facts about the voice command feature defect of Google Nest products;

b.     Given the voice command feature defect's hidden and technical nature, Plaintiffs and the other Class Members lack the sophisticated expertise in Google Nest software implementation of Google's servers necessary to discover that the voice command feature of Google Nest devices was

1  defective;

2  c.  Plaintiffs and the Class Members could not reasonably have been expected to learn or

3  discover that the Nest devices had a defect before purchase;

4  d.  Google knew that Plaintiffs and the other Class Members could not reasonably have

5  been expected to learn or discover the defect and the associated repair or replacement costs;

6  e.  Google actively concealed the defect by responding to negative reviews and support

7  inquiries without disclosing the defect, asserting that Google Nest devices were not defective, asserting that

8  non-software factors caused problems with the Google Nest voice command feature, and replacing defective

9  Google Nest devices with identical devective Google Nest devices; and

10  f.  Google made, helped to make, or conspired to make partial and incomplete

11  representations about the quality, dependability, and reliability of the Google Nest devices, while

12  purposefully withholding material facts about a known voice command feature defect.  Because they

13  volunteered to provide information about the Google Nest devices that they marketed and offered for sale to

14  consumers, Google had the duty to disclose the whole truth.

15  99.  By misrepresenting the Google Nest devices as dependable, reliable, properly-functioning

16  and free from defects, and/or by failing to disclose and actively concealing the voice command feature

17  defect to consumers, Google engaged in untrue and misleading advertising prohibited by Cal. Bus. & Prof.

18  Code § 17500.

19  100.  Google made or caused to be made and disseminated from California nationwide advertising,

20  marketing, labeling, and other publications containing numerous statements that were untrue or misleading,

21  and which were known, or which by the exercise of reasonable care they should have been known, to be

22  untrue and misleading to consumers, including Plaintiffs and the other Class Members.

23  101.  Google's unfair or deceptive acts and practices, including their misrepresentations,

24  concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency

25  or capacity to mislead and create a false impression in consumers that the Nest devices were reliable, and

26  that they did not have a voice command feature defect.  Indeed, those misrepresentations, concealments,

27  omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiff

28  and Class Members, about the true reliability, quality, and true value of the Google Nest devices.

102.    Google intended for Plaintiffs and the other Class Members to rely on its misrepresentations, omissions, and concealment—which they did by purchasing Google Nest devices at the prices they paid believing that the Google Nest devices would not have a defect that would affect their quality and reliability.

103.    Google's misrepresentations, omissions, and concealment of materials regarding the defect in the Google Nest products, and true characteristics thereof, were material to the decisions of Plaintiffs and the other Class Members to purchase the Google Nest devices, as Google intended. Plaintiffs and the other Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on the Google's misrepresentations and omissions that the Google Nest devices' voice command feature was reliable in deciding to purchase Google Nest devices.

104.    Absent Google's disclosure of material facts, Plaintiffs and the other Class Members cannot discover the defect because it requires complex knowledge and access to documents in the exclusive possession of Google.

105.    The fact that the Google Nest devices may fail to register and abide by verbal commands is a material fact that requires disclosure under the FAL.

106.    Google did not disclose the defect to consumers until July 23, 2025, when Anish Kattukaran acknowledged the reliability problems with Google's smart home devices.

107.    Plaintiffs and the other Class Members reasonably relied on Google's misrepresentations, omissions, and concealment of material facts regarding the reliability of Google Nest devices by purchasing them and believing they would be functional.

108.    Plaintiffs' and Class Members' reliance on Google's misrepresentations, omissions and concealment was reasonable because they did not and could not know of the defect because they do not possess the necessary complex skill and knowledge required to identify it, and Google misrepresented, concealed and failed to disclose material facts that would have made discovery of the defect possible to ordinary consumers.

109.    Had Plaintiffs and the other Class Members known the truth about the defective nature of the Google Nest devices, they would not have purchased them or would have paid significantly paid less for them.

110.    Plaintiffs and the other Class Members will likely continue to be damaged by Google's

deceptive trade practices because Google continues disseminating misleading information on the Google

Nest device's packaging and online retail listings.  Thus, injunctive relief enjoining Google's deceptive

practices is proper.

111.    Google's conduct caused and continues to cause substantial injury to Plaintiffs and other

Class Members.  Plaintiffs have suffered injury in fact as a result of Google's unlawful conduct.

112.    Plaintiffs and the other Class Members seek an order enjoining the Google's false

advertising, any such orders or judgments as may be necessary to restore to Plaintiffs and the other Class

Members any money acquired by unfair competition, including restitution and/or restitutionary

disgorgement, and any other just and proper relief available under the false advertising provisions of the

California FAL.

## THIRD CAUSE OF ACTION

### *Violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, et seq.)*

113.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding

paragraphs of this Complaint.

114.    Plaintiffs bring this cause of action for themselves and on behalf of the Class.

115.    Cal. Bus. & Prof. Code § 17200 prohibits acts of "unfair competition," including any

"unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading

advertising."  Google's conduct related to the Google Nest devices violated each of this statute's three

prongs.

116.    Google committed an unlawful business act or practice in violation of Cal. Bus. & Prof. Code

§ 17200, *et seq.*, by its violations of the CLRA, Cal. Civ. Code § 1750, *et seq.*, as set forth above, and by the

acts and practices set forth in this Complaint.

117.    Google committed an unlawful business act or practice in violation of Cal. Bus. & Prof. Code

§ 17200, *et seq.*, when it represented that the Google Nest devices could be controlled through voice

commands, when in fact they could not.

118.    Google committed fraudulent business acts and practices in violation of Cal. Bus. & Prof.

Code § 17200, *et seq.*, when it affirmatively and knowingly misrepresented that the Google Nest devices

respond to voice command, when in fact they do not.  Google's representations and concealment of the

voice command defect are likely to mislead the public with regard to the true defective nature of the Google Nest devices.

119.    Google also disseminated unfair, deceptive, untrue and/or misleading advertising in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, and § 17500, *et seq.* when it distributed advertisements falsely representing that the Google Nest devices are responsive to voice command.

120.    Google's unfair or deceptive acts or practices occurred repeatedly in the course of Google's trade or business, and were capable of deceiving a substantial portion of the purchasing public.

121.    As a direct and proximate result of Google's unfair and deceptive practices, Plaintiffs and Class Members suffered and will continue to suffer actual damages.

122.    As a result of its unfair and deceptive conduct, Google has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiffs and Class Members pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17204.

123.    Plaintiffs and the Class further seek an order enjoining Google's unfair or deceptive acts or practices, and an award of attorneys' fees and costs under Cal. Civ. Proc. Code § 1021.5.

## FOURTH CAUSE OF ACTION

### *Breach of Implied Warranty of Merchantability (Cal. Com. Code §§ 2314 and 10212)*

124.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

125.    Plaintiffs bring this cause of action for themselves and on behalf of the Class.

126.    Google Nest devices are "goods" under Cal. Com. Code § 2105(1).

127.    Plaintiffs and the other Class Members are "buyers" of the Google Nest devices under Cal. Com. Code § 2103(1)(a).

128.    Google is a "merchant" and "seller" under Cal. Com. Code §§ 2104(1) and 2103(1)(d).

129.    California law conferred an implied warranty that the defective Nest devices were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Cal. Com. Code § 2314.

130.    The defective Nest devices are not merchantable and, as such, Google breached its implied warranties, because at the time of sale and all times thereafter:

a.    The Nest devices suffer from a voice command feature defect that renders them useless for controlling a smart home ecosystem through voice commands;

b.    The Nest devices would not pass without objection in the smart home device industry given the voice command feature defect;

c.    The voice command feature defect renders the Google Nest devices unfit for ordinary purposes; and

d.    The voice command feature defect affects the central functionality of the Google Nest devices.

131.    Due to the voice command feature defect, Plaintiffs and the other Class Members cannot operate their Google Nest devices as intended, substantially free from defects.  Google Nest devices no longer respond to voice commands, randomly turn on or off, randomly go offline, disconnect from each other, fail to perform basic tasks, and respond slowly or with error messages.  As a result, Plaintiffs and the other Class Members cannot use their Nest devices for the purposes for which they purchased them.

132.    Plaintiffs and the other Class Members timely provided Google notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Google's notice, above.

133.    Alternatively, Plaintiffs and the other Class Members were excused from providing Google with notice and an opportunity to cure the breach, because it would have been futile.  As alleged above, Google knew about the voice command defect for years.

134.    Plaintiffs and the other Class Members have had sufficient direct dealings with Google or its agents (retailers) to establish privity of contract between Plaintiffs and the other Class Members.

135.    Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

## **FIFTH CAUSE OF ACTION**

### *Fraud*

136.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

137.    Plaintiffs bring this fraud count, under both the misrepresentation and omission/concealment theories, under California law, for themselves and on behalf of the Class.

138.    Alternatively, Plaintiffs bring this cause of action for themselves and on behalf of the Class under the common law of fraud, both by misrepresentation and omission/concealment, as there are no true conflicts among the state's laws of fraudulent concealment and the common law.

## 1.    <u>Affirmative Misrepresentation</u>

139.    Google represented and marketed Google Nest devices in general—and their voice command feature in particular—as high-quality, dependable, and reliable.  For example, Google represented to users, "You can use voice commands to manage devices that you've added to the Google Home app. These can be media devices, speakers and displays, lights, thermostats, and much more. To use a voice command on a Google Nest or Home speaker or display, you can say 'Hey Google' or 'OK Google' and then the command."[14]  These representations signaled to consumers that the defective Google Nest devices possess important characteristics that they in fact do not possess—namely that they could respond to voice command.

140.    The quality, dependability, and reliability of the defective Google Nest devices were material facts because a reasonable person would find it important in purchasing or retaining a voice-controlled smart home device and because it directly impacts the value of the Google Nest devices purchased by Plaintiffs and the other Class Members.

141.    Google's representations regarding Google Nest's voice command feature and Google Nest devices' quality, dependability, and reliability were false because the Google Nest devices have the voice command feature defect that causes the device to not respond or respond inaccurately during normal use.  In doing so, the presence of the voice command feature defect makes the Google Nest devices unfit for normal use.

142.    Google knew that its representations were false and intended Plaintiffs and other Class Members to rely on them, which they did by purchasing Google Nest devices at the prices they paid believing that they would not have a defective voice command feature that would affect the quality and

---

[14] Google Nest Help, *Control smart home devices by voice*, https://support.google.com/googlenest/answer/7207759?hl=en (last visited Nov. 6, 2025).

1    reliability of the Google Nest devices.

2        143.    Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer

3    would not have expected that the Google Nest devices have a defect in their core feature.  They had no way

4    of learning the facts that Google had concealed or failed to disclose.  Plaintiffs and the other Class Members

5    did not, and could not, unravel Google's deception on their own.

6        144.    Had Plaintiffs and the other Class Members known of the voice command feature defect

7    within the Google Nest devices, they would not have purchased the Google Nest devices or would have paid

8    less for them.

9        145.    As a direct and proximate result of Google's omissions and concealment, Plaintiffs and other

10    Class Members either overpaid for their Google Nest devices, or would not have purchased the Google Nest

11    devices at all if the voice command feature defect had been disclosed to them.  Accordingly, Google is

12    liable to Plaintiffs and the other Class Members for their damages in an amount to be proven at trial.

13        146.    Google acted maliciously, oppressively, deliberately, with intent to defraud; in reckless

14    disregard of Plaintiffs' and Class Members' rights; and to enrich itself.  Google's misconduct warrants an

15    assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the

16    future, which amount shall be determined according to proof at trial.

17                **2.    Omission/Concealment**

18        147.    Google is liable for fraud by omission, concealment, and/or non-disclosure.  *See e.g.,*

19    Restatement (Second) of Torts §§550-51 (1977).

20        148.    Google owed Plaintiffs and the other Class Members a duty to disclose all the material facts

21    concerning the defective voice command feature of Google Nest devices because:

22            a.    Given Google's role in the design, manufacture, pre-sale testing, sale, and post-sale

23    monitoring of Google Nest devices, and its experience and knowledge as technical experts of smart home

24    devices, it possessed exclusive access to and was in a superior position to know the true facts about the

25    voice command feature defect of Google Nest devices;

26            b.    Google knew that the defective voice command feature gave rise to serious

27    interference with ordinary use by consumers who purchased the Google Nest devices;

28            c.    Given the voice command defect's hidden, proprietary, and technical nature,

Plaintiffs and the other Class Members lacked the sophisticated expertise in smart home device software and implementation of Google's servers necessary to discover that the Google Nest devices were defective;

d.      Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that the Google Nest products had a defective voice command feature before purchase;

e.      Google knew that Plaintiffs and the other Class Members could not reasonably have been expected to learn or discover the defect and the associated repair or replacement costs;

f.      Google knew that the Google Nest devices, and the defect therein, gave rise to serious operational difficulties for consumers who purchased and used them;

g.      Google knew about and investigated the voice command feature defect, but then did not notify consumers about it or further launch a comprehensive recall for all Google Nest devices, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the voice command defect in their Google Nest devices;

h.      Google actively concealed the defect and the associated repair and replacement costs by responding to negative reviews and inquiries without disclosing the defect, asserting that the Google Nest products were not defective, asserting that non-Google server-side factors (such as WiFi connection or microphone sensitivity settings) caused problems with the Google Nest devices, and replacing defective Google Nest devices with identical defective Google Nest devices; and

i.      Google made, helped to make, or conspired to make partial and incomplete representations about quality, dependability, and reliability of the Google Nest devices, while purposefully withholding material facts about a known defect of its central feature—the voice command feature. Because it volunteered to provide information about the Google Nest devices that it marketed and offered for sale to consumers, Google had the duty to disclose the whole truth.  In breach of its duties, Google failed to disclose the voice command feature defect and that the Google Nest devices were not high-quality or free of defects to Plaintiffs and the other Class Members in connection with the sale of the Google Nest devices.

149.    The voice command feature defect of Google Nest devices is material to the sale of the Google Nest devices because a reasonable person would find it important in purchasing or retaining a new voice-controlled smart home device and because it directly impacts the value of the Google Nest devices purchased by Plaintiffs and the other Class Members.

150.     Google intended for Plaintiffs and the other Class Members to rely on their omissions and concealment—which they did by purchasing the Google Nest devices at the prices they paid believing that they would not have a voice command feature defect that would affect the quality and reliability of the Google Nest devices.

151.     Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Google Nest devices have a defect that poses such a serious risk of malfunction or harm.  They had no way of learning the facts that Google had concealed or failed to disclose. Plaintiffs and other Class Members did not, and could not, unravel Google's deception on their own.

152.     Google actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Google Nest devices to protect profits and to avoid costly recalls that would expose it to liability for those expenses and harm the commercial reputation of Google and its products.  It did so at the expense of Plaintiffs and the other Class Members.

153.     If Google had fully and adequately disclosed the voice command feature defect to consumers, Plaintiffs and the other Class Members would have seen such a disclosure.

154.     Through their omissions and concealment with respect to the voice command defect within the Google Nest devices, Google intended to induce, and did induce, Plaintiffs and the other Class Members to either purchase a Google Nest device that they otherwise would not have purchased, or pay more for it than they otherwise would have paid.

155.     Had Plaintiffs and the other Class Members known of the voice command feature defect within the Google Nest devices, they would not have purchased the Google Nest devices or would have paid less for them.

156.     As a direct and proximate result of Google's omissions and concealment, Plaintiffs and other Class Members either overpaid for the Google Nest devices or would not have purchased the Google Nest devices at all if the voice command feature defect had been disclosed to them.  Accordingly, Google is liable to Plaintiffs and the other Class Members for their damages in an amount to be proven at trial.

157.     Google acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of Plaintiffs' and Class Members' rights; and to enrich itself.  Google's misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the

future, which amount shall be determined according to proof at trial.

## SIXTH CAUSE OF ACTION

### *Fraud in the Inducement*

158.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

159.    Plaintiffs bring this cause of action for themselves and on behalf of the Class.

160.    Google's fraud and false affirmations of fact, described herein, induced Plaintiffs and Class Members to purchase their Google Nest devices and thereby enter into a contract with Google.

161.    As described above, Google had a duty to disclose the voice command feature defect in the Google Nest devices to Plaintiffs and Class Members.

162.    As described above, Google's actions constituted actual fraud and deceit as defined by Cal. Civ. Code §§ 1572 and 1710.

163.    Plaintiffs justifiably relied to their detriment on the truth and completeness of Google's material representations regarding the Google Nest devices.  Class members are presumed to have relied upon Google's misrepresentations and concealment of the true facts because those facts are material to a reasonable consumer's decision to purchase Google Nest devices.

164.    Google's fraud and concealment was also uniform across all Class Members; Google concealed from everyone the true nature of the voice command feature defect in the Google Nest devices.

165.    Plaintiffs and Class Members would not have agreed to purchase their Google Nest devices, or would have paid less for them, if they had not been deceived by Google.

166.    As a result of Google's inducements, Plaintiffs and Class Members sustained actual damages including but not limited to not receiving a product that performs as promised and not receiving the benefit of the bargain of their Google Nest devices.

167.    Google's conduct was systematic, repetitious, knowing, intentional, and malicious, and demonstrated a lack of care and reckless disregard for Plaintiffs' and Class Members' rights and interests. Google's conduct thus warrants an assessment of punitive damages under Cal. Civ. Code § 3294 and other applicable state laws, consistent with the actual harm it has caused, the reprehensibility of its conduct, and the need to punish and deter such conduct.

**SEVENTH CAUSE OF ACTION**

***Unjust Enrichment***

168.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

169.    Plaintiffs bring this cause of action for themselves and on behalf of the Class.

170.    Google has been unjustly enriched in that it sold the Google Nest devices with defective voice command functions that do not respond to voice commands as it represented they would.

171.    When purchasing their Google Nest devices, Plaintiffs and Class Members reasonably believed that the Google Nest devices would perform as advertised and would consistently respond to voice commands.

172.    Plaintiffs and Class Members received less than what they paid for in that the Google Nest devices do not respond to voice commands and therefore do not deliver as promised.

173.    Plaintiffs and Class Members conferred a benefit on Google by purchasing, and paying a premium for, the Google Nest devices.  Had Plaintiffs and Class Members known about the voice command feature defect, they would not have purchased the Google Nest devices or would have paid significantly less for them.

174.    Google should therefore be required to disgorge all profits, benefits, and other such compensation it obtained through its wrongful conduct.

**EIGHTH CAUSE OF ACTION**

***Revocation of Acceptance (Cal. Com. Code § 2608)***

175.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

176.    Plaintiffs bring this cause of action for themselves and on behalf of the Class.

177.    Plaintiffs and Class Members revoke their acceptance of the Google Nest devices.

178.    Plaintiffs and Class Members had no knowledge of the voice command feature defect when they purchased the Google Nest devices, and their acceptance of the goods was reasonably induced by the difficulty of discovering the voice command feature defect and Google's false representations that the Google Nest devices could reliably and consistently respond to voice commands, and therefore were not

1    defective.

2    179.    The voice command feature defect substantially impairs the value of the Google Nest devices

3    to Plaintiffs and Class Members.

4    180.    There has been no substantial change in the condition of the Google Nest devices not caused

5    by the voice command feature defect.

6    181.    As described herein, Plaintiffs notified Google of the voice command feature defect.

7    182.    Consequently, Plaintiffs and Class Members are entitled to revoke their acceptances, to

8    receive all payments made to Google, and to all incidental damages, consequential damages, and all other

9    damages allowable under law, all in amounts to be proven at trial.

10    **NINTH CAUSE OF ACTION**

11    ***Violations of the Magnuson-Moss Act – Implied Warranty (15 U.S.C. § 2301, et seq.)***

12    183.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding

13    paragraphs of this Complaint.

14    184.    Plaintiffs bring this cause of action for themselves and on behalf of the Class.

15    185.    The Google Nest devices are "consumer products" within the meaning of the Magnuson-

16    Moss Warranty Act, 15 U.S.C. § 2301(1).

17    186.    Plaintiffs and Class Members are "consumers" within the meaning of the Magnuson-Moss

18    Warranty Act, 15 U.S.C. § 2301(3), because they are persons entitled under applicable state law to enforce

19    against the warrantor the obligations of its express and implied warranties.

20    187.    Google is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty

21    Act, 15 U.S.C. §§ 2301(4)-(5).

22    188.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the

23    failure of the warrantor to comply with a written or implied warranty.

24    189.    Google provided Plaintiffs and the other Class Members with an implied warranty of

25    merchantability in connection with the purchase or lease of the Google Nest devices, an "implied warranty"

26    within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).   As a part of the implied

27    warranty of merchantability, Google warranted that the Google Nest devices would pass without objection

28    in the trade as designed, manufactured, and marketed, and were adequately labeled.

190.    Google breached these implied warranties, as described in more detail above, and are therefore liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1).

191.    Any effort to limit the implied warranties in a manner that would exclude coverage of the Google Nest devices is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Google Nest devices is null and void.

192.    Plaintiffs and the other Class Members have had sufficient direct dealings with either Google or its agents to establish privity of contract.

193.    Nonetheless, privity is not required here because Plaintiffs and other Class Members are intended third-party beneficiaries of contracts between Google and its retailers, and specifically, of the implied warranties.  The retailers were not intended to be the ultimate consumers of the Google Nest devices and have no rights under the warranty agreements provided with the Google Nest devices; the warranty agreements were designed for and intended to benefit consumers.

194.    Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give Google notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Fed. R. Civ. P. 23.

195.    Furthermore, to the extent such notice is required, it has been provided through the letter sent to Google by Plaintiffs' counsel on October 20, 2025 (Ex. A), described herein, as well as through complaints lodged by Plaintiff Kwitny and other Class Members.  Google refused to remedy its wrongs after receiving these notifications and any further notice would be futile.

196.    Plaintiffs' individual claims place into controversy an amount equal to or exceeding $25.00.  The amount in controversy of this entire action exceeds the sum of $50,000.00, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.  Plaintiffs, individually and on behalf of the other Class Members, seek all damages permitted by law in an amount to be proven at trial.

197.    In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class Members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class members in connection with the commencement and prosecution of this action.

198.    Further, Plaintiffs and the Class are also entitled to equitable relief under 15 U.S.C.

§ 2310(d)(1).

## TENTH CAUSE OF ACTION

### *Violations of the Song-Beverly Act (Civ. Code §§ 1791.1 and 1792, et seq.), via Breach of Implied Warranty of Merchantability*

199.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

200.    Plaintiffs bring this cause of action for themselves and on behalf of the Class.

201.    Plaintiffs and members of the Class are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

202.    The Google Nest devices are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

203.    Google is a "manufacturer" of the Google Nest devices within the meaning of Cal. Civ. Code § 1791(j).

204.    Google impliedly warranted to Plaintiffs and Class Members that its Nest devices were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792; however, the Nest devices do not have the quality that a buyer would reasonably expect, and were therefore not merchantable.

205.    Cal. Civ. Code § 1791.1(a) states:  "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

      a.    Pass without objection in the trade under the contract description.

      b.    Are fit for the ordinary purposes for which such goods are used.

      c.    Are adequately contained, packaged, and labeled.

      d.    Conform to the promises or affirmations of fact made on the container or label.

206.    The Google Nest devices would not pass without objection in the trade because they do not perform as warranted because they do not respond accurately to voice commands.

207.    Similarly, the Google Nest devices' inability to respond accurately to voice commands renders them unfit for the ordinary purpose of a voice-controlled smart home device.

208.    The Google Nest products are not adequately labeled because the labeling represents that they respond to voice command, which they do not do.

209.    For the same reason, the Google Nest devices do not conform to the promises or affirmations of fact made on the container or label.

210.    Google thus breached the implied warranty of merchantability.

211.    As a direct and proximate result of Google's breach of the implied warranty of merchantability, Plaintiffs and the other Class Members did not receive the benefit of their bargain and received goods with a defect that substantially impairs their value to Plaintiffs and Class Members. Plaintiffs and Class Members were damaged as a result of the defect in the Google Nest devices, the products' malfunctioning, and the nonuse of their Google Nest devices.

212.    Notice of breach is not required because Plaintiffs and the other Class Members did not only purchase their Google Nest devices directly from Google.

213.    Nevertheless, Plaintiffs notified Google of its breach via an October 20, 2025 letter to its general counsel. *See* Ex. A.

214.    Pursuant to Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiffs and Class Members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Google Nest devices or the overpayment or diminution in value of their Google Nest devices.

215.    Pursuant to Cal. Civ. Code § 1794, Plaintiffs and the other Class Members are entitled to costs and attorneys' fees.

## X.    **REQUEST FOR RELIEF**

Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court enter judgment in their favor and against Google as follows:

A.    An order certifying the proposed Class and any necessary subclasses, designating Plaintiffs as the named representatives of the Class, designating the undersigned as Class Counsel, and making such further orders for the protection of Class Members as the Court deems appropriate under Fed. R. Civ. P. 23;

B.    An order directing that Google bears the cost of any notice sent to the Class;

C.    A declaration that the Google Nest devices are defective;

D.    An award to Plaintiffs and the other Class Members compensatory, exemplary, and punitive remedies and damages and statutory penalties, including interest, in an amount to be proven

1          at trial;

2     E.    An award of restitution and other appropriate equitable relief to Plaintiffs and the other Class

3          Members;

4     F.    An award to Plaintiffs and the other Class Members for the return of the purchase prices of

5          the defective Google Nest devices with interest from the time it was paid, for the

6          reimbursement of the reasonable expenses occasioned by the sale, for damages and for

7          reasonable attorney fees;

8     G.    An order instituting a Google-funded program, using transparent, consistent, and reasonable

9          protocols, under which out-of-pocket and loss-of-use expenses and damages claims

10         associated with the defective Google Nest devices can be made and paid, such that Google,

11         not the Class Members, absorbs the losses and expenses fairly traceable to the recall of the

12         defective Google Nest devices;

13    H.    A declaration that Google must disgorge, for the benefit of Plaintiffs and the other Class

14         Members, all or part of the ill-gotten profits they received from the sale of the defective

15         Google Nest devices, or make full restitution to Plaintiffs and the other Class Members;

16    I.    An injunction against Google enjoining it from conducting its business through the unlawful,

17         unfair, and fraudulent acts or practices set forth herein;

18    J.    An order requiring Google to fully and adequately disclose the defects associated with the

19         Google Nest devices to anyone who may still be at risk of buying and using the Google Nest

20         devices;

21    K.    An order for jury trial and damages according to proof;

22    L.    An award of attorneys' fees and costs, as allowed by law;

23    M.    An award of pre-judgment and post-judgment interest, as provided by law;

24    N.    Leave to amend this Complaint to conform to the evidence produced during discovery and at

25         trial; and

26    O.    Such other relief as may be appropriate under the circumstances.

27  **XI.    JURY DEMAND**

28  Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs, individually and on behalf of the Class, demand a trial

1    by jury of any and all issues in this action so triable.

2

3    Dated:  November 24, 2025                Respectfully submitted,

4                                            LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

5

6                                            By: */s/ Jonathan D. Selbin*
                                                  Jonathan D. Selbin
7                                            **LIEFF CABRASER HEIMANN**
                                                **& BERNSTEIN, LLP**
8                                            Jonathan D. Selbin (SBN 170222)
                                             jselbin@lchb.com
9                                            Jason Lichtman (*pro hac vice* forthcoming)
                                             jlichtman@lchb.com
10                                           250 Hudson Street, 8th Floor
                                             New York, NY  10013
11                                           Telephone:  212.355.9500
                                             Facsimile:  212.355.9592

12                                           **LIEFF CABRASER HEIMANN**
                                                **& BERNSTEIN, LLP**
13                                           Tiseme Zegeye (SBN 319927)
                                             tzegeye@lchb.com
14                                           275 Battery Street, 29th Floor
                                             San Francisco, CA  94111
15                                           Telephone:  415.956.1000
                                             Facsimile:  415.956.1008

16                                           **KAPLAN GORE, LLP**
17                                           Darren T. Kaplan (*pro hac vice* forthcoming)
                                             dkaplan@kaplangore.com
18                                           346 Westbury Ave., Suite 200
                                             Carle Place, NY 11514
19                                           Telephone (NY): 212.999.7370 ext. 101
                                             Fax (NY): 404.537.3320

20                                           *Attorneys for Plaintiffs and the Proposed Class*

21

22

23

24

25

26

27

28

# EXHIBIT A

**Lieff
Cabraser
Heimann&
Bernstein**

Attorneys at Law

Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
t  212.355.9500
f  212.355.9592

October 20, 2025

**VIA E-MAIL AND CERTIFIED MAIL**

Halimah DeLaine Prado
General Counsel
Google 1600 Amphitheatre Parkway
Mountain View, CA 94043
(415) 816-2483
halimahprado@googlemail.com

RE:     *Google Home/Nest Defect – Prefiling Notice Letter*

Dear Ms. Prado:

Together with Kaplan Gore LLP, we represent Plaintiffs Alexander Kwitny and Nicholas Schieder. We write on their behalf and on behalf of all others similarly situated (the "Proposed Class") to provide you with notice pursuant to UCC 2-607(3) and the Consumer Legal Remedies Act (Cal. Civ. Code § 1750 *et seq*.), as well as under other state consumer protection statutes, that we believe that Google has breached express and/or implied warranties, committed fraud, unjustly enriched itself, and/or engaged in unfair and deceptive acts and other unlawful practices in violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq., and other state consumer protection statutes in connection with the manufacture, advertising, marketing, and sale of certain Google Home and Nest devices.

Plaintiff Alexander Kwitny, a California resident, purchased numerous Google Home and Nest devices, including a Google Nest Hub Max, Google Nest Doorbell, Google Nest Cam Indoor, and a Google Home Max Smart Speaker, from Amazon, Walmart, and Fry's Electronics over a period of nine years starting in 2016. He installed these devices throughout his home and utilized the voice command feature dozens of times a day. Starting in approximately 2019, his Google Home and Nest devices began to malfunction. The devices became significantly slower to respond or incapable of responding altogether. He attempted to fix these problems by resetting or relinking devices and upgrading his devices. None of these actions were successful in resolving the malfunctions. Kwitny spent countless hours and thousands of dollars on the defective Google Home and Nest devices.

Plaintiff Nicholas Schieder, a New York resident, purchased four Google Nest Minis and a Google Nest Hub Max from Best Buy and Amazon over a period of four years starting in 2020. He installed these devices throughout his home and utilized the voice

Halimah DeLaine Prado, General Counsel
October 20, 2025
Page 2

command feature dozens of times a day to prompt internet inquiries, turn on lights, and obtain basic information such as the weather forecast. Approximately one year ago, his Google Nest devices began to malfunction. The devices became significantly slower to respond or incapable of responding altogether —the speaker would often tell him, "I can't help with that" when prompted to do basic tasks like turning on the lights. He attempted to fix these problems by increasing the sensitivity of device mics, resetting or relinking devices, and upgrading his Google Nest Hub to a Google Nest Hub Max. None of these actions were successful in resolving the malfunctions. Schieder spent countless hours and hundreds of dollars on the defective Google Nest devices.

Each of these Plaintiffs purchased a Google Home or Nest device with the reasonable expectation that the device, including the voice-command system, would be dependable and fit for its ordinary and intended purpose and conform to the standards of the trade. Instead, they have faced significant malfunctions, errors, and general unresponsiveness of the voice command system, rendering the devices dysfunctional, unreliable, and obsolete.

Further investigation has confirmed that this problem is widespread across Google Home and Nest devices. Specifically, there have been numerous complaints about frequent glitches and the voice-command system malfunctioning. We have learned of hundreds of individuals who have experienced the same significant problems with Google Home and Nest. The types of system malfunctions reported include consistently failing to understand voice commands, returning irrelevant information, losing internet connectivity despite a stable WiFi connection, and initiating unresponsive commands. Users indicate a steady decline in functionality often culminating in the cessation of use of the devices entirely because they do not work consistently and cause significant problems when they malfunction. Users report investing many hours and hundreds and sometimes thousands of dollars in the Google Home and Nest eco system.

We are aware that the chief product officer at Google Home and Nest, Anish Kattukaran, acknowledged the product defects in a public post on X on July 24, 2025, stating, "Hey everyone, I want to acknowledge the recent feedback about Google Assistant reliability on our home devices. I sincerely apologize for what you're experience and feeling! We hear you loud and clear and are committed to getting this right – and making sure we have a long term solution that provides better reliability and capability, We have been actively working on major improvements for some time and will have more to share in the fall."[1] As part of Google's October 2025 rollout of Gemini for Home, integrating AI into Google Nest and Home devices and services, Kattukaran again acknowledged the product defects, "admitting to past performance issues with Google Home."[2]

---

[1] Adamya Sharpa, Google Home is becoming a house of glitches, users say, Android Authority (July 23, 2025), https://www.androidauthority.com/google-home-speakers-hubs-issues-3579553/; https://x.com/AnishKattukaran.
[2] Mishaal Rahman, How Google plans to fix its smart home mess with Gemini for Google Home (October 4, 2025), https://www.androidauthority.com/google-home-win-back-trust-3604047/

Halimah DeLaine Prado, General Counsel
October 20, 2025
Page 3

Upon information and belief, Google knew of the Google Home and Nest defects and concealed the defects from consumers. Furthermore, Google breached express and/or implied warranties by failing to disclose the defect and failing to compensate users. It appears Google knowingly manufactured and sold, and continues to sell, the Google Home and Nest devices with a known defects that do not function as represented and warranted. Google thus misrepresented the nature and characteristics of the Google Nest and Home devices and knowingly omitted and failed to disclose the presence of the defects to Plaintiffs Alexander Kwitny and Nicholas Schieder and the Proposed Class. In addition to constituting common law fraud and breach of warranties, such acts and practices violated California's Consumers Legal Remedies Act and state consumer protection statutes.

On behalf of Plaintiffs Alexander Kwitny and Nicholas Schieder, and the Proposed Class, we hereby demand that within thirty (30) days of receiving this letter, Google remedies its violations by doing the following: (1) inform us what actions, if any, Google has taken to repair, fix, or rectify this issue in Google Home and Nest devices; (2) cease the deceptive practices described above, (3) offer all Proposed Class members the option to return their Google Home and Nest devices for a full refund; and (4) monitor and repair these problems free of charge going forward. If Google refuses to provide the demanded relief within 30 days, we intend to file a class action to seek from Google compensatory and punitive damages, restitution, and any appropriate injunctive/equitable relief.

If you believe any of the information above is inaccurate, we invite you to meet with us and/or to discuss pre-suit resolution of these issues for all purchasers of the affected Google Home and Google Nest devices. You can reach me at (212)-355-9500 ext. 6604, or jselbin@lchb.com. I look forward to hearing from you.

Very truly yours,

Jonathan Selbin

CC: Darren Kaplan

3343717.1

# EXHIBIT B



Perkins Coie LLP
3150 Porter Drive
Palo Alto, CA 94304-1212

T. +1.650.838.4300
F. +1.650.838.4350
perkinscoie.com

**BY EMAIL AND OVERNIGHT COURIER**

Eric B. Evans
Partner
EEvans@perkinscoie.com
D.  +1.650.838.4334

November 19, 2025

Jonathan D. Selbin
Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413

**Re:    Your October 20, 2025, Letter**

Dear Mr. Selbin:

We represent Google LLC regarding the allegations concerning Google Home and Nest devices raised in your October 20, 2025, letter. Google takes user feedback and product reliability seriously and regrets any frustration your clients may have experienced. Google, however, expressly denies the factual assertions and legal conclusions presented in your letter.

First, Google disputes that there is any "widespread" problem "across Google Home and Nest devices" causing the voice-command system to malfunction, including by "failing to understand voice commands, returning irrelevant information, losing internet connectivity . . . and initiating unresponsive commands." Oct. 20, 2025 Letter at 2. The issues that you list are broadly described and could have a variety of causes or solutions: devices "losing internet connectivity" could be caused by numerous issues unique to a user's home setup; "returning irrelevant information" sounds like a subjective rather than objective determination and would require a review of the specific query and response to troubleshoot; and "initiating unresponsive commands" is too vague to be addressed. Moreover, Google provides its services "as is," without "any warranties about the content or features of the services, including their accuracy, reliability, availability or ability to meet your needs." Google Terms of Service, available at https://policies.google.com/terms?hl=en-US#footnote-services. Nonetheless, Google stands ready to work with your clients to try to troubleshoot their issues.

Second, your letter mischaracterizes the statements made by the Senior Director and Head of Product for Google Home and Nest, Mr. Anish Kattukaran. In no way did Mr. Kattukaran publicly acknowledge any product defects in Google Home and Nest devices. Rather, he merely acknowledged that some users have provided feedback about the reliability of Google Assistant on Home devices, and confirmed that Google is working on improvements. And, as your letter acknowledges, in October 2025, Google released Gemini for Home, which Google intends to make available "to every speaker, smart display, camera and doorbell [Google has] made in the last decade." For now, Gemini for Home is available via an early access program, which users can sign up for in their Google Home app, as described here: https://support.google.com/googlenest/answer/16618650?hl=en#requestearlyaccesstogfhva. Mr.

Jonathan D. Selbin
November 19, 2025
Page 2

Kwitny or Mr. Schieder are welcome to enroll and, if they do so, they will be notified when Gemini for Home features are available in their locations.

Third, Google Home and Nest devices are subject to the Google Hardware Limited Warranty, which is attached as Exhibit 1 and accessible at https://support.google.com/product-documentation/answer/9322027?hl=en. The Limited Warranty provides a 1-year limited warranty for covered defects, and makes clear that it is the only warranty that Google provides. Moreover, it states that the exclusive remedy for any defect covered by the Limited Warranty is the repair or replacement of the device, or a refund of the purchase price paid for the device, subject to Google's discretion. Your letter does not indicate whether Mr. Kwitny or Mr. Schieder submitted a claim under the Limited Warranty for any of their Google or Nest devices, nor does it provide their email addresses so that Google can search its records for any such warranty claim. But given that Mr. Kwitny and Mr. Schieder purchased at least some of their devices in 2016 and 2020, respectively, it appears that the limited warranty period has expired for at least some of their devices. However, if they are still within the limited warranty period for any of their other devices, and such devices are exhibiting a qualifying hardware issue, we encourage them to submit a warranty claim as soon as possible. For out-of-warranty devices or concerns related to software configuration and ecosystem performance, Google offers troubleshooting resources and support designed to address the many factors affecting Home and Nest Devices' perceived responsiveness and reliability, available through the Google Nest Help Center page at https://support.google.com/googlenest?sjid=11766522341627193642-NC.

Fourth, it is worth noting that there are many factors outside of Google's control that can affect the performance of Google Home and Nest devices, and the performance of Google Assistant on those devices. For example, Wi-Fi quality, building construction and materials (which may interfere with Wi-Fi and cellular signals), third-party integrations, home network configuration, ISP issues, and user settings, among other issues, can materially impact users' experiences with their Home and Nest Devices and Google Assistant, and preclude any inference of a uniform defect.

Because there is no known defect in Google Home and Nest Devices, there is no basis for your claim that Google knowingly failed to disclose such defects, or otherwise engaged in any conduct amounting to fraud, a breach of any warranty, or a violation of the California Consumer Legal Remedies Act or any other consumer protection statute. Thus, Google cannot agree to the relief requested in your letter.

Given the above, we do not believe there are grounds for filing any lawsuit, much less a putative class action lawsuit, against Google based on the issues raised in your letter. Should you wish to discuss this matter further, please feel free to contact us.

Jonathan D. Selbin
November 19, 2025
Page 3


Google expressly reserves and does not waive all rights, defenses, and objections.

Very truly yours,

Eric B. Evans

Exhibit 1

# Google Consumer Hardware Limited Warranty – USA and Canada

This Limited Warranty applies only if you are a consumer and purchased your Google-branded product ("Google Product") in the United States or Canada.

**What does this warranty cover and how long does it last?** Google warrants that a new Google Product (including any ancillary parts that may be packaged with it) will be free from defects in materials and workmanship under normal use in accordance with Google's published user documentation for one year from the date of original retail purchase in its original packaging by you. If a Google Product has been refurbished by Google or a third party authorized by Google  ("Refurbished"), Google warrants that the Refurbished Google Product (including any ancillary parts that may be packaged with it) will be free from defects in materials and workmanship under normal use in accordance with Google's published user documentation for ninety days from the original date of retail purchase by you (these warranties are collectively referred to as our "Limited Warranty").

**What will Google do?** (THIS IS YOUR EXCLUSIVE REMEDY) If a defect covered by this Limited Warranty arises and you return your Google Product as directed by Google during the Limited Warranty period (which is one year for new Google Products and ninety days for Refurbished Google Products), Google will elect in its sole discretion and to the extent permitted by law to repair your Google Product using new or refurbished parts, replace your Google Product with a new or refurbished Google Product functionally at least equivalent to yours, or accept the return of your Google Product in exchange for a refund of the purchase price you paid for your Google Product. If Google repairs or replaces your Google Product, the repaired or replaced Product will continue to be warranted for the remaining time of the original warranty period. All returned parts for which you have received a replacement will become the property of Google. Repair or replacement may result in loss of data. Nothing in this Limited Warranty will reduce or otherwise affect your statutory rights in relation to your Google Product.

THE LIMITED WARRANTY WRITTEN ABOVE IS THE ONLY EXPRESS WARRANTY GOOGLE PROVIDES FOR YOUR GOOGLE PRODUCT, AND THE ABOVE REMEDY IS YOUR SOLE REMEDY. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, GOOGLE EXPRESSLY DISCLAIMS ALL OTHER WARRANTIES AND CONDITIONS OF ANY KIND, WHETHER STATUTORY OR IMPLIED, ARISING FROM COURSE OF CONDUCT OR OTHERWISE, REGARDING YOUR GOOGLE PRODUCT, EXCEPT THAT ANY IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT THAT CANNOT BE DISCLAIMED ARE LIMITED IN DURATION TO THE PERIOD OF THE EXPRESS WARRANTY ABOVE (EITHER ONE YEAR OR NINETY DAYS, DEPENDING ON WHETHER YOUR GOOGLE PRODUCT IS NEW OR REFURBISHED).

Some states, provinces or territories do not allow limitations on how long an implied warranty lasts, so the above limitation may not apply to you.

**What does this warranty not cover?** This Limited Warranty is only valid and enforceable in locations where the Google Product is sold and will apply only if you purchased your Google Product from Google or its authorized resellers. This Limited Warranty only applies to hardware components (and not any software elements) of Google Product. This Limited Warranty also does not apply to any consumable parts, such as batteries or protective coatings, that due to their nature diminish over time, unless failure has occurred due to a defect in materials or workmanship, nor to any cosmetic damage unless failure has occurred due to a defect in materials or workmanship. This Limited Warranty does not apply to damage caused by: (1) normal wear and tear; (2) accidents; (3) misuse (including failure to follow product documentation); (4) neglect; (5) disassembly; (6) alterations; (7) servicing other than by Google-authorized technicians; and (8) external causes such as, but not limited to: liquid damage, exposure to sharp objects, exposure to excessive force, anomalies in the electrical current supplied to the Google product, and extreme thermal or environmental conditions. Liquid damage voids this Limited Warranty. This Limited Warranty does not guarantee that use of the Google Product will be uninterrupted or error-free. The ninety-day Limited Warranty Google provides for Refurbished Google Products is not applicable to Google Products refurbished by third parties not authorized to do so by Google, even if sold by a Google authorized reseller.

YOU EXPRESSLY UNDERSTAND AND AGREE THAT, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, GOOGLE AND ITS SUBSIDIARIES AND AFFILIATES (COLLECTIVELY, "GOOGLE PARTIES") SHALL NOT BE LIABLE TO YOU UNDER ANY THEORY OF

LIABILITY (WHETHER CONTRACT, TORT (INCLUDING NEGLIGENCE), BREACH OR FAILURE OF ANY WARRANTY OR OTHERWISE) FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR EXEMPLARY DAMAGES THAT MAY BE INCURRED BY YOU IN CONNECTION WITH YOUR GOOGLE PRODUCT OR THESE TERMS, INCLUDING ANY LOSS OF DATA, WHETHER OR NOT A GOOGLE PARTY OR ITS REPRESENTATIVES HAVE BEEN ADVISED OF OR SHOULD HAVE BEEN AWARE OF THE POSSIBILITY OF ANY SUCH LOSSES ARISING. YOU EXPRESSLY UNDERSTAND AND AGREE THAT, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, THE GOOGLE PARTIES' TOTAL LIABILITY IN CONNECTION WITH YOUR GOOGLE PRODUCT OR THIS LIMITED WARRANTY WILL NOT EXCEED THE AMOUNT YOU ACTUALLY PAID AT RETAIL FOR YOUR GOOGLE PRODUCT.

Some states, provinces or territories do not allow the exclusion or limitation of incidental or consequential damages, so the above limitation or exclusion may not apply to you.

**What if my Google Product also has damage which is not covered by this Limited Warranty?** If, in addition to a defect covered by this Limited Warranty, your Google Product also has damage which is not covered (for example, damage caused by normal wear and tear or misuse by you) then Google is only responsible for addressing the defect covered by this Limited Warranty. In certain circumstances, Google may be prevented or restricted in carrying out the repair work until the damage which is not covered has also been fixed. For example, if your Google Product has a cracked screen then this may prevent Google from carrying out the repair work unless the screen is also fixed. If this happens, where permitted by law, Google may notify you and may give you the option of: (1) Google repairing the damage not covered by this Limited Warranty at your cost (and Google will tell you the amount in advance); or (2) Google returning your Google Product to you without carrying out any repair work.

**What if my Google Product is damaged by liquid**?  If your Google Product has sustained liquid damage this Limited Warranty no longer applies and Google will not carry out any repair work. Google will give you the option of: (1) replacing your Google Product at your cost (and Google will tell you the amount in advance); or (2) Google returning your Google Product to you.

**How do you make a claim?** To make a claim under the Limited Warranty, please contact Google Product Support at g.co/warrantyclaim. You must provide your name, contact information, and the serial number of your Google Product to receive support. Before receiving warranty service, Google may require that you provide proof of purchase details, respond to questions designed to assist with diagnosing potential issues and follow Google's procedures for obtaining warranty service.

**Other limitations:** No vendor, seller, authorized reseller, employee, or representative of Google or its affiliates or any third party is authorized to make any modification, extension, or addition to this Limited Warranty. If any term of this Limited Warranty is held to be illegal or unenforceable, the remaining terms of this Limited Warranty will remain in full force and effect.

**How state, province, territory, and other laws apply to you:** This warranty gives you specific legal rights, and you may also have other rights that vary from jurisdiction to jurisdiction.

This Limited Warranty is given by Google LLC, organized in the state of Delaware, whose principal place of business is at 1600 Amphitheatre Parkway, Mountain View, CA, 94043, United States.

G953-00932-01 REV F

# EXHIBIT C

GOOGLE TERMS OF SERVICE

Effective May 22, 2024

[Archived versions](#)

[Country version:](#) United States

# What's covered in these terms

# We know it's tempting to skip these Terms of Service, but it's important to establish what you can expect from us as you use Google <u>services</u>, and what we expect from you.

These Terms of Service reflect [the way Google's business works](#), the laws that apply to our company, and [certain things we've always believed to be true](#). As a result, these Terms of Service help define Google's relationship with you as you interact with our services. For example, these terms include the following topic headings:

- [What you can expect from us](#), which describes how we provide and develop our services

- [What we expect from you](#), which establishes certain rules for using our services

- [Content in Google services](#), which describes the intellectual property rights to the content you find in our services — whether that content belongs to you, Google, or others

- [In case of problems or disagreements](#), which describes other legal rights you have, and what to expect in case someone violates these terms

Understanding these terms is important because, by accessing or using our services (whether you're signed in to a Google account or not), you're agreeing to these terms.

Besides these terms, we also publish a Privacy Policy. We encourage you to read it to better understand how you can update, manage, export, and delete your information.

# Terms

## Service provider

Google services are provided by, and you're contracting with:

Google LLC
organized under the laws of the State of Delaware, USA, and operating under the laws of the USA

1600 Amphitheatre Parkway
Mountain View, California 94043
USA

## Age requirements

If you're under the age required to manage your own Google Account, you must have your parent or legal guardian's permission to use a Google Account. Please have your parent or legal guardian read these terms with you.

If you're a parent or legal guardian, and you allow your child to use the services, then these terms apply to you and you're responsible for your child's activity on the services.

Some Google services have additional age requirements as described in their [service-specific additional terms and policies](#).

---

# Your relationship with Google

These terms help define the relationship between you and Google. When we speak of "Google," "we," "us," and "our," we mean Google LLC and its [affiliates](#). Broadly speaking, we give you permission to access and use our [services](#) if you agree to follow these terms, which reflect [how Google's business works and how we earn money](#).

## What you can expect from us

### Provide a broad range of useful services

We provide a broad range of services that are subject to these terms, including:

- apps and sites (like Search and Maps)

- platforms (like Google Shopping)

- integrated services (like Maps embedded in other companies' apps or sites)

- devices (like Google Nest and Pixel)

Many of these services also include content that you can stream or interact with.

Our services are designed to work together, making it easier for you to move from one activity to the next. For example, if your Calendar event includes an address, you can

click on that address and Maps can show you how to get there.

## Develop, improve, and update Google services

We're constantly developing new technologies and features to improve our services. For example, we use artificial intelligence and machine learning to provide you with simultaneous translations, and to better detect and block spam and malware. As part of this continual improvement, we sometimes add or remove features and functionalities, increase or decrease limits to our services, and start offering new services or stop offering old ones. When a service requires or includes downloadable or preloaded software, that software sometimes updates automatically on your device once a new version or feature is available. Some services let you adjust your automatic update settings.

If we make material changes that negatively impact your use of our services or if we stop offering a service, we'll provide you with reasonable advance notice, except in urgent situations such as preventing abuse, responding to legal requirements, or addressing security and operability issues. We'll also provide you with an opportunity to export your content from your Google Account using Google Takeout, subject to applicable law and policies.

# What we expect from you

## Follow these terms and service-specific additional terms

The permission we give you to access and use our services continues as long as you comply with:

- **these terms**

- **service-specific additional terms**, which could, for example, include things like additional age requirements

You also agree that our Privacy Policy applies to your use of our services. We also provide resources like the Copyright Help Center, Safety Center, Transparency Center, and descriptions of our technologies from our policies site to answer common questions and

to set expectations about using our services. Finally, we may provide specific instructions and warnings within our services – such as dialog boxes that alert you to important information.

Although we give you permission to use our services, we retain any intellectual property rights we have in the services.

## Respect others

We want to maintain a respectful environment for everyone, which means you must follow these basic rules of conduct:

- comply with applicable laws, including export control, sanctions, and human trafficking laws

- respect the rights of others, including privacy and intellectual property rights

- don't abuse or harm others or yourself (or threaten or encourage such abuse or harm) — for example, by misleading, defrauding, illegally impersonating, defaming, bullying, harassing, or stalking others

Our service-specific additional terms and policies, such as our Generative AI Prohibited Use Policy, provide additional details about appropriate conduct that everyone using those services must follow. If you find that others aren't following these rules, many of our services allow you to report abuse. If we act on a report of abuse, we also provide the process described in the Taking action in case of problems section.

## Don't abuse our services

Most people who access or use our services understand the general rules that keep the internet safe and open. Unfortunately, a small number of people don't respect those rules, so we're describing them here to protect our services and users from abuse. In that spirit:

You must not abuse, harm, interfere with, or disrupt our services or systems — for example, by:

- introducing malware

- spamming, hacking, or bypassing our systems or protective measures

- jailbreaking, adversarial prompting, or prompt injection, except as part of our [safety and bug testing programs](#)

- accessing or using our services or content in fraudulent or deceptive ways, such as:

  - phishing

  - creating fake accounts or content, including fake reviews

  - misleading others into thinking that generative AI content was created by a human

  - providing services that appear to originate from you (or someone else) when they actually originate from us

- providing services that appear to originate from us when they do not

- using our services (including the content they provide) to violate anyone's legal rights, such as intellectual property or privacy rights

- reverse engineering our services or underlying technology, such as our machine learning models, to extract trade secrets or other proprietary information, except as allowed by applicable law

- using automated means to access content from any of our services in violation of the machine-readable instructions on our web pages (for example, robots.txt files that disallow crawling, training, or other activities)

- using AI-generated content from our services to develop machine learning models or related AI technology

- hiding or misrepresenting who you are in order to violate these terms

- providing services that encourage others to violate these terms

## Permission to use your content

Some of our services are designed to let you upload, submit, store, send, receive, or share [your content](#). You have no obligation to provide any content to our services and you're free to choose the content that you want to provide. If you choose to upload or

Google Terms of Service – Privacy & Terms – Google

share content, please make sure you have the necessary rights to do so and that the content is lawful.

## License

Your content remains yours, which means that you retain any intellectual property rights that you have in your content. For example, you have intellectual property rights in the creative content you make, such as reviews you write. Or you may have the right to share someone else's creative content if they've given you their permission.

We need your permission if your intellectual property rights restrict our use of your content. You provide Google with that permission through this license.

### What's covered

This license covers your content if that content is protected by intellectual property rights.

### What's not covered

- This license doesn't affect your privacy rights — it's only about your intellectual property rights

- This license doesn't cover these types of content:

  - publicly-available factual information that you provide, such as corrections to the address of a local business. That information doesn't require a license because it's considered common knowledge that everyone's free to use.

- feedback that you offer, such as suggestions to improve our services. Feedback is covered in the [Service-related communications](#) section below.

## Scope

This license is:

- worldwide, which means it's valid anywhere in the world

- non-exclusive, which means you can license your content to others

- royalty-free, which means there are no monetary fees for this license

## Rights

This license allows Google to:

- host, reproduce, distribute, communicate, and use your content — for example, to save your content on our systems and make it accessible from anywhere you go

- publish, publicly perform, or publicly display your content, if you've made it visible to others

- modify and create derivative works based on your content, such as reformatting or translating it

- sublicense these rights to:

  - other users to allow the services to work as designed, such as enabling you to share photos with people you choose

  - our contractors who've signed agreements with us that are consistent with these terms, only for the limited

purposes described in the [Purpose](#) section below

## Purpose

This license is for the limited purpose of:

- **operating and improving the services**, which means allowing the services to work as designed and creating new features and functionalities. This includes using automated systems and algorithms to analyze your content:

  - for spam, malware, and illegal content

  - to recognize patterns in data, such as determining when to suggest a new album in Google Photos to keep related photos together

  - to customize our services for you, such as providing recommendations and personalized search results, content, and ads (which you can change or turn off in [Ads Settings](#))

  This analysis occurs as the content is sent, received, and when it is stored.

- **using content you've shared publicly to promote the services**. For example, to promote a Google app, we might quote a review you wrote. Or to promote Google Play, we might show a screenshot of the app you offer in the Play Store.

- **developing new technologies and services** for Google consistent with these terms

## Duration

This license lasts for as long as your content is protected by intellectual property rights.

If you remove from our services any content that's covered by this license, then our systems will stop making that content publicly

available in a reasonable amount of time. There are two exceptions:

- If you already shared your content with others before removing it. For example, if you shared a photo with a friend who then made a copy of it, or shared it again, then that photo may continue to appear in your friend's Google Account even after you remove it from your Google Account.

- If you make your content available through other companies' services, it's possible that search engines, including Google Search, will continue to find and display your content as part of their search results.

# Using Google services

## Your Google Account

If you meet these age requirements you can create a Google Account for your convenience. Some services require that you have a Google Account in order to work — for example, to use Gmail, you need a Google Account so that you have a place to send and receive your email.

You're responsible for what you do with your Google Account, including taking reasonable steps to keep your Google Account secure, and we encourage you to regularly use the Security Checkup.

## Using Google services on behalf of an organization or business

Many organizations, such as businesses, non-profits, and schools, take advantage of our services. To use our services on behalf of an organization:

• an authorized representative of that organization must agree to these terms

• your organization's administrator may assign a Google Account to you. That administrator might require you to follow additional rules and may be able to access or disable your Google Account.

## Service-related communications

To provide you with our services, we sometimes send you service announcements and other information. To learn more about how we communicate with you, see Google's Privacy Policy.

If you choose to give us feedback, such as suggestions to improve our services, we may act on your feedback without obligation to you.

## Content in Google services

## Your content

Some of our services allow you to generate original content. Google won't claim ownership over that content.

Some of our services give you the opportunity to make your content publicly available — for example, you might post a product or restaurant review that you wrote, or you might upload a blog post that you created.

- See the Permission to use your content section for more about your rights in your content, and how your content is used in our services

- See the Removing your content section to learn why and how we might remove user-generated content from our services

If you think someone is infringing your intellectual property rights, you can send us notice of the infringement and we'll take appropriate action. For example, we suspend or close the Google Accounts of repeat copyright infringers as described in our Copyright Help Center.

## Google content

Some of our services include content that belongs to Google — for example, many of the visual illustrations you see in Google Maps. You may use Google's content as allowed by these terms and any service-specific additional terms, but we retain any intellectual property rights that we have in our content. Don't remove, obscure, or alter any of our branding, logos, or legal notices. If you want to use our branding or logos, please see the Google Brand Permissions page.

## Other content

Finally, some of our services give you access to content that belongs to other people or organizations — for example, a store owner's description of their own business, or a newspaper article displayed in Google News. You may not use this content without that person or organization's permission, or as otherwise allowed by law. The views

expressed in other people or organizations' content are theirs, and don't necessarily reflect Google's views.

# Software in Google services

Some of our services include downloadable or preloaded software. We give you permission to use that software as part of the services.

The license we give you is:

- worldwide, which means it's valid anywhere in the world

- non-exclusive, which means that we can license the software to others

- royalty-free, which means there are no monetary fees for this license

- personal, which means it doesn't extend to anyone else

- non-assignable, which means you're not allowed to assign the license to anyone else

Some of our services include software that's offered under open source license terms that we make available to you. Sometimes there are provisions in the open source license that explicitly override parts of these terms, so please be sure to read those licenses.

You may not copy, modify, distribute, sell, or lease any part of our services or software.

# In case of problems or disagreements

## Warranty disclaimer

We built our reputation on providing useful, reliable services like Google Search and Maps, and we're continuously improving our services to meet your needs. However, for legal purposes, we offer our services without warranties unless explicitly stated in our service-specific additional terms. The law requires that we explain this using specific legal language and that we use capital letters to help make sure you see it, as follows:

TO THE EXTENT ALLOWED BY APPLICABLE LAW, WE PROVIDE OUR SERVICES "AS IS" WITHOUT ANY EXPRESS OR IMPLIED WARRANTIES, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT. FOR EXAMPLE, WE DON'T MAKE ANY WARRANTIES ABOUT THE CONTENT OR FEATURES OF THE SERVICES, INCLUDING THEIR ACCURACY, RELIABILITY, AVAILABILITY, OR ABILITY TO MEET YOUR NEEDS.

DON'T RELY ON THE SERVICES FOR MEDICAL, LEGAL, FINANCIAL, OR OTHER PROFESSIONAL ADVICE. ANY CONTENT REGARDING THOSE TOPICS IS PROVIDED FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR ADVICE FROM A QUALIFIED PROFESSIONAL.

## Liabilities

### For all users

Both the law and these terms try to strike a balance as to what you or Google can claim from the other in case of problems. That's why the law requires everyone to be responsible for certain liabilities — but not others — under these terms.

These terms only limit our responsibilities as allowed by applicable law. These terms don't limit liability for gross negligence or willful misconduct.

To the extent allowed by applicable law:

• Google is liable only for its breaches of these terms or applicable [service-specific additional terms](#)

• Google isn't liable for:

    • loss of profits, revenues, business opportunities, goodwill, or anticipated savings

    • indirect or consequential losses

    • punitive damages

• Google's total liability arising out of or relating to these terms is limited to the greater of (1) $200 or (2) the fees paid to use the relevant services in the 12 months before the dispute

## For business users and organizations only

If you're a [business user](#) or [organization](#):

• To the extent allowed by applicable law, you'll [indemnify](#) Google and its directors, officers, employees, and contractors for any third-party legal proceedings (including actions by government authorities) arising out of or relating to your unlawful use of the [services](#) or violation of these terms or [service-specific additional terms](#). This indemnity covers any liability or expense arising from claims, losses, damages, judgments, fines, litigation costs, and legal fees.

• If you're legally exempt from certain responsibilities, including [indemnification](#), then those responsibilities don't apply to you under these terms. For example, the United Nations enjoys certain immunities from legal obligations and these terms don't override those immunities.

# Taking action in case of problems

Before taking action as described below, we'll provide you with advance notice when reasonably possible, describe the reason for our action, and give you an opportunity to clarify the issue and address it, unless doing so would:

- cause harm or [liability](#) to a user, third party, or Google

- violate the law or a legal enforcement authority's order

- compromise an investigation

- compromise the operation, integrity, or security of our [services](#)

## Removing your content

If any of [your content](#) (1) breaches these terms, [service-specific additional terms or policies](#), (2) violates applicable law, or (3) could harm our users, third parties, or Google, then we reserve the right to take down some or all of that content in accordance with applicable law. Examples include child pornography, content that facilitates human trafficking or harassment, terrorist content, and content that infringes someone else's [intellectual property rights](#).

## Suspending or terminating your access to Google services

Without limiting any of our other rights, Google may suspend or terminate your access to the services or delete your Google Account if any of these things happen:

- you materially or repeatedly breach these terms, [service-specific additional terms or policies](#)

- we're required to do so to comply with a legal requirement or a court order

- your conduct causes harm or [liability](#) to a user, third party, or Google — for example, by hacking, phishing, harassing, spamming, misleading others, or scraping content

that doesn't belong to you

For more information about why we disable accounts and what happens when we do, see this Help Center page. If you believe your Google Account has been suspended or terminated in error, you can appeal.

Of course, you're always free to stop using our services at any time. If you do stop using a service, we'd appreciate knowing why so that we can continue improving our services.

## Settling disputes, governing law, and courts

For information about how to contact Google, please visit our contact page.

California law will govern all disputes arising out of or relating to these terms, service-specific additional terms, or any related services, regardless of conflict of laws rules. These disputes will be resolved exclusively in the federal or state courts of Santa Clara County, California, USA, and you and Google consent to personal jurisdiction in those courts.

## About these terms

By law, you have certain rights that can't be limited by a contract like these terms of service. These terms are in no way intended to restrict those rights.

These terms describe the relationship between you and Google. They don't create any legal rights for other people or organizations, even if others benefit from that relationship under these terms.

We want to make these terms easy to understand, so we've used examples from our [services](#). But not all services mentioned may be available in your country.

If these terms conflict with the [service-specific additional terms](#), the additional terms will govern for that service.

If it turns out that a particular term is not valid or enforceable, this will not affect any other terms.

If you don't follow these terms or the [service-specific additional terms](#), and we don't take action right away, that doesn't mean we're giving up any rights that we may have, such as taking action in the future.

We may update these terms and [service-specific additional terms](#) (1) to reflect changes in our services or how we do business — for example, when we add new services, features, technologies, pricing, or benefits (or remove old ones), (2) for legal, regulatory, or security reasons, or (3) to prevent abuse or harm.

If we materially change these terms or [service-specific additional terms](#), we'll provide you with reasonable advance notice and the opportunity to review the changes, except (1) when we launch a new service or feature, or (2) in urgent situations, such as preventing ongoing abuse or responding to legal requirements. If you don't agree to the new terms, you should remove [your content](#) and stop using the services. You can also end your relationship with us at any time by [closing your Google Account](#). If you close your Google Account and then access or use our services without an account, that access and use will be subject to the most current version of these terms.

---

DEFINITIONS

# affiliate

An entity that belongs to the Google group of companies, which means Google LLC and its subsidiaries, including the following companies that provide consumer services in the EU: Google Ireland Limited, Google Commerce Limited, and Google Dialer Inc.

## business user

An individual or entity who is not a consumer (see consumer).

## consumer

An individual who uses Google services for personal, non-commercial purposes outside of their trade, business, craft, or profession. (See business user)

## copyright

A legal right that allows the creator of an original work (such as a blog post, photo, or video) to decide if and how that original work may be used by others, subject to certain limitations and exceptions (such as "fair use" and "fair dealing").

## country version

We associate your Google Account with a country (or territory) so that we can determine:

- the Google affiliate that provides the services to you and that processes your information as you use the services

- the version of the terms that govern our relationship

The country associated with your account is: United States. If you think this country association is incorrect, you can learn more and contact us.

## disclaimer

A statement that limits someone's legal responsibilities.

## indemnify or indemnity

An individual or organization's contractual obligation to compensate the losses suffered by another individual or organization from legal proceedings such as lawsuits.

## intellectual property rights (IP rights)

Rights over the creations of a person's mind, such as inventions (patent rights); literary and artistic works (copyright); designs (design rights); and symbols, names, and images used in commerce (trademarks). IP rights may belong to you, another individual, or an organization.

## liability

Losses from any type of legal claim, whether the claim is based on a contract, tort (including negligence), or other reason, and whether or not those losses could have been reasonably anticipated or foreseen.

## organization

A legal entity (such as a corporation, non-profit, or school) and not an individual person.

## services

The Google services that are subject to these terms are the products and services listed at https://policies.google.com/terms/service-specific, including:

- apps and sites (like Search and Maps)

- platforms (like Google Shopping)

Case 5:25-cv-10182      Document 1      Filed 11/24/25      Page 77 of 77

- integrated services (like Maps embedded in other companies' apps or sites)

- devices and other goods (like Google Nest)

Many of these services also include content that you can stream or interact with.

## trademark

Symbols, names, and images used in commerce that are capable of distinguishing the goods or services of one individual or organization from those of another.

## warranty

An assurance that a product or service will perform to a certain standard.

## your content

Things that you create, upload, submit, store, send, receive, or share using our services, such as:

- Docs, Sheets, and Slides you create

- blog posts you upload through Blogger

- reviews you submit through Maps

- videos you store in Drive

- emails you send and receive through Gmail

- pictures you share with friends through Photos

- travel itineraries that you share with Google